515 A.2d 1

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Joseph MALLON, John Mattero, William Sweeney, Kurt Hecker, and John Hartung, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 2, 1986.

Filed Aug. 7, 1986.

Reargument Denied Sept. 30, 1986.

Robert A. Graci, Harrisburg, for Com., appellant.

Robert W. Auve, Chester, for Mallon, appellee.

Arthur T. Donato, Jr., Media, for Mattero, appellee.

Steven C. Leach, Newtown Square, for Sweeney, appellee.

James P. McHugh, Chester, Bala Cynwyd, for Hartung, appellee.

William A. George, Media, for Hecker, appellee.

Before OLSZEWSKI, TAMILIA and KELLY, JJ.

KELLY, Judge:

This case involves an appeal by the Commonwealth of an Order dismissing the criminal informations filed against each of the five defendants. The lower court found that further prosecution was barred by Pennsylvania Rule of Criminal Procedure 1100, which limits the time within which a criminal defendant must be brought to trial. We hold that the 180–day period set forth in Rule 1100 had not lapsed; we therefore reverse and remand the cases for further proceedings consistent with this Opinion.

The pertinent facts giving rise to this appeal are as follows. In early 1984, the Office of Attorney General, Bureau of Criminal Investigations, initiated an investigation into a possible bookmaking and sports gambling operation in Delaware County and the surrounding area. Application for telephone pen register devices, followed by applications for electronic surveillance of the telephone lines, were approved. The conversations recorded purportedly reflected a sports gambling operation involving each of the five appellees herein. On April 5, 1984, pursuant to search warrants, agents searched several homes and seized certain records. During the searches, each of the appellees was served with a subpoena ordering him to appear on April 25, 1984 before an investigating grand jury sitting in Harrisburg.[1] The appellees invoked the Fifth Amendment privilege when they appeared before the grand jury.

On September 20, 1984, the grand jury returned presentments against the appellees. The presentments, which rec-

---

1. *See* 42 Pa. C.S.A. § 4544, relating to multicounty investigating grand juries.

ommended that the Attorney General institute criminal proceedings, were approved by the grand jury judge and submitted to the Attorney General. The Commonwealth filed criminal complaints against each of the five appellees on October 11, 1984, and the appellees were arrested. Appellee Hartung filed a motion to dismiss on March 17, 1985, which the other appellees joined; the appellees contended that the time for trial provided in Rule 1100 had lapsed. Trial was scheduled to commence on April 1, 1985. On that date, after hearing the arguments of counsel, the court below granted the appellees' motion and dismissed the cases. The Commonwealth appealed.

The issue presented on appeal is one of first impression: When does the Rule 1100 180–day period commence in a case which is based upon an investigating grand jury presentment which has been passed on to the Commonwealth attorney for possible action? The appellees argue, and the lower court agreed, that the 180–day period begins to run on the date that the investigating grand jury's presentment is approved by the supervising judge. The Commonwealth argues that the period commences only after a formal complaint is filed.[2]

In order to resolve the issue presented in the instant case, an understanding of grand jury proceedings is necessary. The majority of criminal actions today are commenced by simply filing a complaint. *Commonwealth v. McCloskey*, 443 Pa. 117, 277 A.2d 764 (1971). A minority of cases, however, involve one form or another of grand jury proceedings. There are two main types of grand juries, with differing powers and purposes. First, an indicting grand jury hears evidence and has the power to issue a "presentment". The presentment of an indicting grand jury "is a written accusation of a crime," and "[i]t is, in fact, as much a criminal accusation as an indictment, except that it ema-

2. The investigating grand jury presentment was approved on September 20, 1984, and the complaints were filed on October 11, 1984. Thus, under the appellees' theory, April 1, 1985, the date trial was to commence, was the 194th day; under the Commonwealth theory, April 1, 1985 was only the 172nd day.

nates from their own knowledge, and not from the public accuser...." *Commonwealth v. Silver,* 238 Pa.Super. 221, 226–7, 357 A.2d 612, 614 (1976), *citing Lloyd & Carpenter's Case,* 5 Pa.L.J. 55, 59, 3 Clark 188, 193 (Ct. of Qtr. Sess. of Phila. 1845); *see also* 1 *Wharton's Criminal Procedure* § 216 at 470 (12th ed. 1974). The indicting grand jury may receive its information from the prosecutor, *see Commonwealth v. McCloskey, supra,* from the personal knowledge of the jurors, *see McNair's Petition,* 324 Pa. 48, 187 A. 498 (1936), or from the presentment of an investigating grand jury, *see Commonwealth v. Silver, supra.* Upon the filing of an indicting grand jury's presentment, a defendant is subject to arrest and prosecution.

In contrast, the presentment of an investigating grand jury differs greatly from that of an indicting grand jury. An investigating grand jury presentment is defined as "[a] written formal *recommendation* by an investigating grand jury that specific persons be charged with specific crimes." 42 Pa. C.S.A. § 4542 (emphasis added).[3] A person named in an investigating grand jury presentment "is not 'held to answer' upon the filing of a presentment and the presentment itself is not sufficient to support a prosecution.... The presentment of the investigating grand jury is nothing more than 'a rather complete summary of the grounds on which the investigating grand jury is making its recommendation.' " *Commonwealth v. Silver, supra,* 238 Pa.Superior Ct. at 229, 357 A.2d at 616 (citations omitted). "The characteristic that distinguishes [investigating grand jury presentments] from other grand jury activity is that they do not formally charge named persons with the commission of specific criminal acts." *Id.; see also* 42 Pa. C.S.A. § 4548(c) ("Except for the power to indict, the investigating grand jury shall have every power available to any other grand jury in the

---

**3.** The instant case involves a multicounty grand jury. 42 Pa. C.S.A. § 4551(c) states that "[w]henever a multicounty investigating grand jury returns a presentment against any person the Attorney General ... shall ... be *authorized to prosecute* the person on behalf of the Commonwealth by instituting criminal proceedings ...". (Emphasis added).

Commonwealth"). "Unenviable as his position may be, the accused still has not had a criminal proceeding commenced against him...." *Commonwealth v. Silver, supra,* 238 Pa. Superior Ct. at 230, 357 A.2d at 616.

Traditionally, the "ordinary" or "regular" grand jury function was to receive complaints and accusations and to find bills of indictment; the investigative duties were considered "special" and occasional. *See Commonwealth v. Hubbs,* 137 Pa.Super. 229, 8 A.2d 611 (1939). Today, however, the majority of counties have discontinued the indicting grand jury process, replacing it with the filing of a criminal information. The indicting grand jury presentment is becoming obsolete and is little more than a rubber stamp in those counties in Pennsylvania where it is still used; the grand jury has evolved into an almost purely investigative body. *See* D. Savitt and B. Gottleib, *Pennsylvania Grand Jury Practice* 1–7 (1983); *see also* Ranney, *Grand Juries in Pennsylvania,* 37 U.Pitt.L.Rev. 1 (1975).

The instant case requires us to view the grand jury process as it relates to Rule 1100. The applicable provision, Rule 1100(a)(2), states:

Rule 1100. Prompt Trial

\* \* \* \* \* \*

(2) *Trial* in a court case in which a written complaint is filed against the defendant after June 30, 1974 *shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed.*

(Emphasis supplied).

Rule 1100 was promulgated "in order to more effectively protect the [Sixth Amendment] right of criminal defendants to a speedy trial ...," and because our Supreme Court believed it "expedient to formulate a rule of criminal procedure fixing a maximum time limit in which individuals accused of a crime shall be brought to trial ..." *Commonwealth v. Hamilton,* 449 Pa. 297, 308, 297 A.2d 127, 133 (1972). "Only a formal indictment, information, or arrest, any of which binds an accused to respond to a criminal

charge, invokes Sixth Amendment privileges. Once a citizen's liberty is restrained, his speedy trial rights are activated." *Commonwealth v. Arnold*, 331 Pa.Super. 345, 360, 480 A.2d 1066, 1074 (1984), *citing U.S. v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Rule 1100 contemplates the commencement of the 180–day period at the point when criminal proceedings are initiated. *Commonwealth v. Lomax*, 324 Pa.Super. 549, 554, 472 A.2d 217, 219 (1984).

The A.B.A. Project on Standards for Criminal Justice, Standards Relating to Speedy Trial, although not dispositive, do offer some guidance. The comment to Section 2.2(a) (Approved Draft, 1968) states:

[I]f at the time of filing of the charge the defendant is being held to answer—whether in custody or on bail or recognizance—.... then the time for trial commences running from the date the defendant was held to answer. *In all other cases the time begins running as of the date the charge is filed. Charge means a written statement* filed with a court *which accuses a person of an offense and which is sufficient to support a prosecution;* it may be an indictment, information, complaint, or affidavit, depending on the circumstances and the law of the particular jurisdiction ...

The plain language of Rule 1100 tends to support the Commonwealth's position that the applicable period of time is measured from the date that the complaint is filed. The Comment to the Rule, however, adds that:

... it is intended that *"complaint" also includes* special documents used in lieu of a complaint to initiate criminal proceedings in extraordinary circumstances; namely, *the presentment of a grand jury*, based on the personal knowledge of the jurors or drafted by the attorney for the Commonwealth, *when submitted to subsequent indicting grand jury....*

The lower court, citing the aforementioned comment and *Commonwealth v. Silver, supra*, held that the Rule 1100 period commenced at the point when the supervising judge

approved the investigating grand jury presentment, and the presentment was handed over to the prosecutor for consideration.  Upon reviewing Rule 1100 and the applicable caselaw, we reverse and remand for trial.  We hold that, in cases originating with investigating grand jury presentments which are referred to the prosecutor, the Rule 1100 period begins to run only after the prosecutor reaches the decision to prosecute the defendant, publicly accusing him through the filing of a criminal complaint.

An investigating grand jury presentment, unlike an indictment, criminal complaint, or information, does not formally charge an accused.  Instead, it is merely a recommendation, in advisory fashion, that the prosecutor should bring formal charges.  Neither the governing statute, court rules nor common law expressly require the prosecutor to file charges against a person named in an investigating grand jury presentment.  See Savitt and Gottleib, *supra*, at 218; 42 Pa. C.S.A. §§ 4542, 4551(c).  This construction is consistent with the principle that a prosecutor is not bound to prosecute every alleged criminal offender, and that the decision of whether to prosecute is within his discretion.  *Commonwealth v. DiPasquale*, 431 Pa. 536, 246 A.2d 430 (1968); *Commonwealth v. Malloy*, 304 Pa.Super. 297, 450 A.2d 689 (1982).  The individual named in the presentment is not subject to any liberty restraints, and the presentment itself is insufficient to support a prosecution.  It is only when the prosecutor chooses to file a complaint that the accused is 'held to answer' a criminal charge and is subject to arrest and imprisonment.  See Silver, *supra.*

Our decision today is consistent with the previous decisions in similar cases.  In *Commonwealth v. Kellie*, 275 Pa.Super. 106, 418 A.2d 634 (1980), this court considered the question of whether the 180–day Rule 1100 period began to run at the time when a private complaint was signed by the complainant or upon its eventual approval by the prosecuting attorney.  We concluded that proceedings against the defendant did not commence, and Rule 1100 did not start to

run, until the prosecuting attorney signed the complaint. Until that time, neither a warrant nor a summons could issue against the defendant. *See also Commonwealth v. Lomax, supra.*

*Commonwealth v. Silver, supra,* cited by appellee, is also in accord with our holding. *Silver* involved an investigating grand jury presentment which was approved by the supervising judge and sent on to the indicting grand jury for action. *See* Rule 1100 Comment, *infra.* The indicting grand jury approved an indictment charging the defendant. Appellee herein misconstrues our holding in *Silver* by arguing that *Silver* requires us to find in the instant case that Rule 1100 began to run when the supervising judge accepted the presentment. We disagree. In *Silver,* the issue before us was whether the Rule 1100 period had commenced with the investigating grand jury's presentment, or whether it commenced at the later date, when the indictments were handed down by the indicting grand jury.[4] The Commonwealth argued that the criminal proceedings had commenced with the investigating grand jury presentment, and that the case was therefore instituted before the effective date of Rule 1100. The defendant argued that the proceedings began, and the Rule 1100 period commenced, only after the indicting jury filed its indictment, and that the case therefore fell within the mandate of Rule 1100.

**4.** *See Commonwealth v. Shelton,* 239 Pa.Super. 195, 198, 361 A.2d 873, 874–5, fn.3 (1976), *reversed on other grounds,* 469 Pa. 8, 364 A.2d 694 (1976):

> [T]he Commonwealth suggests that the criminal proceedings commenced against the appellant on the date of the Presentment by the Special Investigating Grand Jury, rather than on the date of the indictments by the regular Grand Jury. This question was recently resolved by this Court in *Commonwealth v. Silver....*

On appeal, the Supreme Court, in a footnote, appears to calculate the Rule 1100 time period as commencing on the date the presentment was approved. *See Commonwealth v. Shelton,* 469 Pa. 8, 14, 364 A.2d 694, 697, fn.9 (1976). This attempted calculation is mere *dicta,* however, since, as the Superior Court stated: "An exact determination of the operative date is unnecessary because the period had expired, whether measured from the date of the Presentment, the date of the Indictment, or any time therein." *Shelton, supra,* 239 Pa.Superior Ct. at 198, 361 A.2d at 875.

The lower court had held that, since 491 days [5] had lapsed *from the date of the indictment*, the Rule 1100 period had expired. This Court affirmed.

> We hold that the time period under Rule 1100 does not commence with the issuing of the presentment of an investigating grand jury, but rather it begins only when that presentment is submitted *for action* to a subsequent indicting grand jury. *In the instant case that action took place* subsequent to the effective date of Rule 1100; and therefore, the Commonwealth is bound by and the appellee is protected by the Rule's rigid time restrictions.

357 A.2d at 616. (Emphasis added). In holding that the Rule 1100 period commenced with the grand jury's indictment we reasoned that, with the mere filing of the presentment, the accused is not yet held to answer the charges. 357 A.2d at 616. Thus, the reasoning and the holding in *Silver* are consistent with our decision in the instant case.

One final comment is in order. The lower court based its holding in part on the proposition that delay between an investigating grand jury presentment "may interfere with employment, drain financial resources, curtail associations, and create problems for the defendant, his family and friends" (Opinion at 7). It is true that delay between public accusation and trial may result in such prejudice to the defendant. *See Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973). By tradition, however, investigating grand juries in Pennsylvania meet and investigate in secrecy. One of the primary reasons for maintaining secrecy is "to protect an innocent accused who is exonerated from disclosure of the fact that he has been under investigation." *In Re Investigating Grand Jury*, 496 Pa. 452, 457–58, 437 A.2d 1128, 1130 (1981). The Pennsylvania legislature and Supreme Court have established rules to preserve this secrecy requirement. The only persons permitted to be present while an investigating grand jury is

5. Rule 1100 required trial to commence within 270 days in actions between June 30, 1973, and June 30, 1974. In actions commenced after June 30, 1974, the time period was shortened to 180 days.

meeting are the alternate jurors, the attorney for the Commonwealth, the witness under examination, his counsel, and the stenographer. Pa.R.Crim.P. 264. Except under certain narrowly defined circumstances, no grand juror, attorney, stenographer, or other person associated with an investigating grand jury may disclose any information concerning the grand jury's proceedings unless otherwise directed by the court. 42 Pa. C.S.A. § 4549(b). If necessary, the supervising judge has the power to seal the presentment, directing that the return of the presentment shall not be disclosed. 42 Pa. C.S.A. § 4551(b). Thus, the defendant may be protected from any possible prejudice resulting from a delay between the investigating grand jury presentment and a prosecutorial decision on whether or not charges should be filed.

The 180–day time period set forth in Rule 1100 did not commence until the date upon which the complaints were filed against appellees, October 11, 1984. As the Commonwealth certified its readiness for trial on April 1, 1985, day 172, the 180–day period had not lapsed. We therefore reverse the order of the lower court and remand for trial.

Order reversed; cases remanded for trial.