**Ronald Paul FIELDS, Individually and on behalf of all others similarly situated, Plaintiff–Appellant,**

v.

**Brenda SOLOFF, Robert M. Morgenthau, Sterling Johnson, Jr., Lewis Halpern, Robert Siberling, J.D., 1 & 2 Wardens, Hon. Robert Abrams, and The New York State Office of Court Administration, Defendants–Appellees.**

No. 507, Docket 90–7240.

United States Court of Appeals, Second Circuit.

Argued Nov. 9, 1990.

Decided Dec. 11, 1990.

Ronald Paul Fields, New York City, pro se.

Thomas P. Litsky, Asst. Dist. Atty., New York County, New York City (Robert M. Morgenthau, Dist. Atty., New York County, Marc Frazier Scholl, Asst. Dist. Atty., New York City, of counsel), for defendants-appellees Morgenthau, Johnson, Halpern and Siberling.

Frederic L. Lieberman, Asst. Atty. Gen. of State of N.Y., New York City (Robert Abrams, Atty. Gen. of State of N.Y., New York City, of counsel), for defendant-appellee Soloff.

Before KAUFMAN, KEARSE and McLAUGHLIN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

The purpose and powers of grand juries have been subject to debate for many years. Over three hundred years ago, John Somers, later Lord Chancellor of England, explained the role of the grand jury:

> [T]he truth of such inquisitions should be put in the hands of Persons of understanding, and integrity, indifferent and impartial, that might suffer no man to be falsely accused, or defamed, nor the lives of any to be put in jeopardy, by the malicious conspiracies of great or small ... For these necessary, honest ends was the institution of Grand Juries. Somers, *The Security of English–Mens Lives, or The Trust, Power and Duty of Grand Jurys of England* 13 (1681).

Grand juries have not always acted as safeguards against unjust prosecutions. Originally, their sole purpose was to initiate prosecutions by investigating crimes in their communities and by accusing purported wrongdoers. The modern American counterpart retains aspects of both functions.

Appellant *pro se* Ronald Fields seeks affirmation of the inviolability of the grand jury's traditional investigatory powers. He alleges that his constitutional rights were violated when the supervising state judge and prosecutors imposed restrictions on actions he undertook while serving on a New York State grand jury. Since, however, there is no federal constitutional right to indictment by a state grand jury, and because the doctrine of immunity bars his federal civil rights action against state officials for their court-related activities, the district court properly dismissed Fields' claims.

## BACKGROUND

Appellant Fields was selected to serve on a New York County Special Narcotics Grand Jury between September 14 and October 9, 1987. He claims that in 1983, while serving on a different grand jury, he became aware of allegedly indictable felony offenses committed by New York County District Attorney Robert Morgenthau. The 1983 grand jury had investigated the circumstances surrounding the death of Michael Stewart, a young black man who died while in the custody of transit police. According to newspaper accounts submitted by appellant in connection with the present action, Fields, while serving on the 1983 grand jury, became suspicious that the District Attorney's office had intentionally presented a weak case. He then independently investigated the matter and shared his assessments with the other grand jurors involved in the Stewart inquiry. The presiding state court judge eventually dismissed the charges because of Fields' interference. The transit officers were later indicted, tried and acquitted.

While serving on the 1987 grand jury, Fields attempted to initiate criminal proceedings against District Attorney Morgenthau. While he did not cite specific criminal violations, appellant alleged generally that Morgenthau promoted an illegal policy of preventing investigation of police brutality claims. Fields asked Assistant District Attorney ("ADA") Lewis Halpern, the "legal advisor" to the grand jury, for permission to present materials about his allega-

tions. This request was denied. He then asked the supervising judge, Acting New York Supreme Court Justice Brenda Soloff, to instruct the grand jury that it had the authority to originate complaints independently of the prosecutor. Justice Soloff refused and issued an oral restraining order prohibiting Fields from communicating with his fellow jurors about matters other than those brought to their attention by the prosecutor.

Fields appeared before the Appellate Division seeking an expedited appeal, presumably from Justice Soloff's oral ruling. He asserts that when he argued this motion, Justice Theodore Kupferman informed him that oral orders were not binding authority. Relying on Justice Kupferman's comment, Fields distributed information packets containing articles about the general and historical aspects of grand jury service to the other grand jurors. Justice Soloff then directed ADAs Lewis Halpern and Robert Siberling, along with two unnamed court wardens, to confiscate the packets, which they proceeded to do, and to enjoin the jurors from discussing the content of the documents.

In response, Fields and ten other grand jurors filed a *pro se* Article 78 petition for a writ of mandamus to require Justice Soloff to return their property and allow them to discuss related matters freely. The Appellate Division dismissed their petition, as did the New York State Court of Appeals.

Fields then sought relief in federal court pursuant to 42 U.S.C. § 1983, which subjects government officials to personal liability for damages when, acting under color of state law, they deprive an individual of "any rights, privileges, or immunities secured by the Constitution." He claimed that Justice Soloff and the state prosecutors violated his federal constitutional rights under the First, Fourth, Tenth and Fourteenth Amendments and sought compensatory and punitive damages, as well as injunctive and declaratory relief.

All of the served defendants moved to dismiss the action. Magistrate Nina Ger-

shon filed a report and recommendation, which was adopted by Judge David Edelstein. The district court dismissed appellant's claims with prejudice.

## DISCUSSION

Fields' allegations relate to restrictions imposed upon him during his service as a New York State grand juror. Before addressing the merits of his appeal, we pause to consider the historical foundation of grand jury powers as they relate to his claims.

Beginning in the Twelfth Century, English grand juries functioned exclusively as the King's investigatory and accusatory arm. They were expected to reach out into the community, retrieve information of wrongdoing and report to the court. Indictments were based solely on the grand jurors' rendition of local gossip, under oath, before a judge. *See* R. Walker & M. Walker, *The English Legal System* 14–15 (1972). It is this historic practice of investigating and generating accusatory reports, called "presentments," [1] which constitutes what has come to be known as the grand jury's "sword" power.

Slower to develop was the grand jury's role as a buffer against government prosecution—its "shield" function. In the Fourteenth Century, grand juries began considering charges brought by outside sources, hearing the evidence of others and listening to witnesses. *See* P. Devlin, *Trial by Jury* 10–12 (1956). Deliberations began to focus on whether, not merely which, persons under government suspicion should be indicted. By the end of the Seventeenth Century, the grand jury had matured into an independent and formidable power. Juries refused to indict people perceived as innocent, despite intense pressure from the King. No longer instruments of the crown, they began aggressively to defend against biased prosecutions.

Grand jury practice expanded to the American colonies, where they devoted most of their time to indictments and presentments. *See generally* Younger, *The People's Panel: The Grand Jury in the United States, 1634–1941* (1963). Just prior to the American Revolution, they became vigilant in insulating from prosecution colonists who had violated unpopular British laws. It is interesting to see this development occurring in an historic and important case. In 1734, the New York "Weekly Journal" published attacks on New York's Royal Governor, William Cosby. Cosby sought prosecution of John Peter Zenger, the paper's printer, for seditious libel but failed to secure an indictment from successive grand juries. Though Zenger was later charged in an information and successfully defended by his lawyer, Andrew Hamilton, protection of his rights began with the grand jury. Kaufman, *The Grand Jury—Sword and Shield*, The Atlantic 56–57, April 1962.

It was this power—the ability to thwart government persecution of innocent citizens—that the framers sought to preserve in the Constitution. The Fifth Amendment states: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." Though courts have interpreted this provision to require grand jury indictments before institution of charges for federal felony offenses, they have not read it to confer plenary indictment power upon the grand jury. *See United States v. Cox*, 342 F.2d 167, 189 (5th Cir.) (*en banc*), *cert. denied*, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965) (Wisdom, J. concurring). Because indictments wield the power to ruin lives and reputations, concert of action between the grand jury and the government attorney is a sound precondition.

The dangers threatened by unfettered grand jury power were addressed in *United States v. Cox.* In *Cox*, a Mississippi federal grand jury sought to abrogate the

---

**1.** Grand juries issue both indictments and presentments. With indictments, the grand jury sets forth felony charges asserted by the government after finding probable cause that a person under investigation has committed the alleged crime. With presentments, the grand jury recommends for prosecution charges it has initiated, or it issues reports condemning official misconduct not rising to the level of a criminal offense.

prosecutor's authority by indicting two black men on charges of perjury for statements made during a lawsuit against voting authorities. These individuals had testified at trial that local officials prevented them from registering to vote. After the grand jury reported that it was ready to indict the two men on perjury charges, Judge Cox ordered the U.S. Attorney to prepare an indictment for the grand jury and to sign it. When the prosecuting attorney refused, the judge found him guilty of contempt of court and imposed a jail sentence pending his compliance. The Fifth Circuit Court of Appeals reversed, holding that "the affixing or withholding of the signature is a matter of executive discretion which cannot be coerced or reviewed by the courts." *Id.* at 172.

■■■ The relevance of *Cox* to our opinion is not in its teaching that indictments require consent of the government attorney. More pertinent is *Cox*'s telling statement about the nature of the checks and balances inherent in our legal system. Not only must the prosecutor wait for the grand jury's determination before he or she may proceed in a felony case, but the grand jury may not issue an indictment where the prosecutor is opposed. Moreover, the court lacks the power to compel the prosecutor to proceed over his objection. Viewed in this light, the federal grand jury system reflects the structure of our constitutional scheme, requiring, for proper resolution, diffusion of power and the existence of checks and balances.

■■ At the state level, the grand jury process varies with the jurisdiction. The Fifth Amendment right to indictment by a grand jury was not incorporated by the Due Process Clause of the Fourteenth Amendment, and, accordingly, does not pertain to the states. *See Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884). Because the states are not required to utilize a grand jury before proceeding with a criminal prosecution, many, perceiving the institution as a mere rubber stamp for government charges, have eliminated it entirely.

The New York State Constitution continues to guarantee indictment by a grand jury for felony charges. And it is Fields' right to unrestrained participation in the New York Special Narcotics grand jury that forms the basis of his suit. Article 1, Section 6 of New York's constitution states that the grand jury's broad power to inquire and indict shall not be "impaired by law." New York courts, however, have acknowledged limitations on that power. *See, e.g., Beach v. Shanley*, 62 N.Y.2d 241, 476 N.Y.S.2d 765, 465 N.E.2d 304 (1984) ("Shield Law," protecting reporters from compelled exposure of their sources, is permissible curtailment of the grand jury).

Long a valuable facet of New York's legal system, the state's grand jury traces its roots back to the prerevolutionary Zenger episode. Later, in the 1930's, "runaway" grand juries, skeptical of the district attorney's integrity, called upon Thomas E. Dewey to investigate corruption at Tammany Hall as a special prosecutor. These efforts, upheld by the state courts, ultimately led to sweeping criminal prosecutions and the demise of that powerful political machine. In the instant case, however, the state courts have enjoined appellant from proceeding against government officials. Fields claims this violated his federal civil rights.

■■ When passing on section 1983 claims, a federal court does not resolve disputes regarding the proper application of state law. In this case, it is sufficient to note that the Fifth Amendment's grand jury guarantee does not extend to the states. Therefore, the operation of a state grand jury need not comply with federal standards.

### A. The Motion to Dismiss

With these basic historical doctrines in mind, we review Judge Edelstein's order. When considering a motion to dismiss, the court takes to be true all facts alleged by the opposing party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Green v. Maraio,* 722 F.2d 1013, 1016 (2d Cir.1983). And, though a section 1983 claim need only allege that an individual acting under color of state law deprived the claimant of a federal right, *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980), certain judicially-created exceptions render public officials immune from suit.

Fields claims multiple constitutional violations arose during his tenure as a member of the state grand jury. He alleges Justice Soloff's speech-restrictive or "gag" order, which prevented him from discussing certain matters with his fellow jurors, deprived him of his First Amendment speech and petition rights and his Fourteenth Amendment due process and equal protection rights. Restrictions on his communications with the other grand jurors, he contends, violated his right to act as a member of an independent grand jury, guaranteed by the New York Constitution and, thus, the Tenth Amendment. He also alleges that confiscation of the information packets contravened his Fourth Amendment right against unreasonable searches and seizures. Because judicial and prosecutorial immunity bar Fields' suit, however, we need not reach the merits of these claims.

### B. *Judicial Immunity*

▇▇▇ Judicial immunity is by now a well-established doctrine. *See Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871). A judge defending against a section 1983 suit is entitled to absolute immunity from damages for actions performed in his judicial capacity. *Green,* 722 F.2d at 1016; *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980). Moreover, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has

acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978) (quoting *Bradley,* 80 U.S. at 351). Liability will not attach where a judge violated state law by an incorrect decision.

Accordingly, Justice Soloff is absolutely immune from suit. Under New York law, she had jurisdiction to supervise the conduct of the grand jury. *See, e.g.,* N.Y. Crim.Proc. § 190.25(6); *Stern v. Morgenthau,* 62 N.Y.2d 331, 335, 476 N.Y.S.2d 810, 812, 465 N.E.2d 349, 351 (1984); *In re Di Cocco,* 364 N.Y.S.2d 990, 996, 80 Misc.2d 854 (1975). Even if the speech-restrictive order was improper, Justice Soloff is immune from section 1983 damages because she did not act in the "clear absence of all jurisdiction."

### C. *Prosecutorial Immunity*

▇▇▇ Claims against the prosecutors were also properly dismissed. Similar to the rule applying to judges, unless a "prosecutor proceeds in the clear absence of all jurisdiction, absolute immunity exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process." *Barr v. Abrams,* 810 F.2d 358, 361 (2d Cir.1987). *See Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). This protection extends to the decision to prosecute as well as the decision not to prosecute. *Schloss v. Bouse,* 876 F.2d 287, 290 (2d Cir.1989). Prosecutors are only qualifiedly immune from suit when they act in an "investigative" or "administrative" capacity. *Id.*

Appellant asserts that District Attorney Morgenthau unlawfully failed to prosecute official misconduct. Though such neglect may result in public criticism, professional discipline or, under extreme circumstances, criminal charges, civil damages under section 1983 are inappropriate. *See Imbler,* 424 U.S. at 428–29, 96 S.Ct. at 994. Since Morgenthau's failure to act was, in reality, a decision not to prosecute, we find him absolutely immune from suit.

 Determining whether absolute or qualified immunity pertains to claims raised against ADAs Halpern and Siberling, for actions they undertook as legal advisors to the grand jury, presents a more difficult issue. Generally, only conduct falling within the prosecutor's litigation-related duties deserves the shield of absolute immunity. *See Barbera v. Smith*, 836 F.2d 96, 101 (2d Cir.1987), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). Most other activities are characterized as administrative or investigative and, thus, merit less protection. *See id.* at 100.

Fields alleges the two ADAs illegally carried out Justice Soloff's order and "allowed" the wardens to seize the information packets from the grand jurors. We are of the view that advising the Special Narcotics Grand Jury about the judge's orders is so "intimately associated with the judicial phase of the criminal process," *Barr*, 810 F.2d at 361, as to fall within that category of absolutely immune activities. *See Imbler*, 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33.

Similarities in the prosecutor's role before grand and petit juries support this conclusion. During grand jury proceedings, the government attorney seeks an indictment based on probable cause of criminal conduct. At trial, the prosecutor attempts to prove culpability beyond a reasonable doubt. Both situations involve presenting a case to a jury and, accordingly, comparable latitude of action is sensible and appropriate.

Moreover, subjecting prosecutors to liability for their conduct before grand juries raises the same policy concerns upon which absolute immunity for trial-related activities is founded. Defending against civil lawsuits would "cause a deflection of the prosecutor's energies from his public duties," *Imbler*, 424 U.S. at 423, 96 S.Ct. at

991, and would impede the independent exercise of prosecutorial judgment upon which the public relies. *See id.*

Informing the grand jury of the judge's orders and overseeing the wardens in confiscating Fields' material were actions undertaken pursuant to their legal obligation to supervise the jury. *See* N.Y.Crim.Proc. §§ 190.25(6), 190.50(2); *People v. DiFalco*, 44 N.Y.2d 482, 487, 406 N.Y.S.2d 279, 282, 377 N.E.2d 732, 735 (1978).[2] Accordingly, the ADAs are absolutely immune from suit.

 Finally, Fields' claims for unspecified injunctive and declaratory relief are without merit. While prospective injunctive relief is not barred by the doctrine of immunity, *Pulliam v. Allen*, 466 U.S. 522, 536, 104 S.Ct. 1970, 1977, 80 L.Ed.2d 565 (1984), Fields fails to explain how an injunction is necessary to prevent irreparable injury to his constitutional rights. *Id.* at 537, 104 S.Ct. at 1978. Fields' alleged injuries all relate to his service as a New York grand juror. No federal constitutional provision, however, guarantees a state grand juror's right to determine independently what evidence or other material will be presented to his or other grand juries. Nor, as we have indicated, do state grand jurors have a federal right to initiate indictments.

We have considered appellant's other claims and find them to be without merit. For the reasons we have set forth, we find Judge Edelstein properly granted the appellees' motion to dismiss, and we affirm.

**2.** *Robison v. Via*, 821 F.2d 913 (2d Cir.1987), does not mandate that qualified immunity attaches to all seizures engaged in by prosecutors. There, the prosecutor was physically present when a police officer removed children from their parents' custody based on a sexual abuse complaint. We found absolute immunity inappropriate under those circumstances because the prosecutor's role in the search and seizure was "not integral to the judicial process itself." *Id.* at 918. The instructions of ADAs Halpern and Siberling regarding the confiscated materials, however, concerned the supervision of the grand jury and, thus, constituted activity within the scope of their judicial duties.