639 A.2d 482

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**William SLICK, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 9, 1993.

Filed March 25, 1994.

564

Amil M. Minora, Asst. Dist. Atty., Scranton, for Com., appellant.

Lawrence J. Monor, Scranton, for appellee.

Before WIEAND, OLSZEWSKI and POPOVICH, JJ.

POPOVICH, Judge:

We are asked to review the May 24, 1993, order of court granting the appellee/William Slick's petition to quash an information charging him with accomplice to murder in the first and third degree filed by the appellant/District Attorney of Lackawanna County. We reverse.

The standard of review was articulated by our Supreme Court in *In re Petition of Acchione,* 425 Pa. 23, 227 A.2d 816, 820 (1967); namely:

> ... courts will not review the actions of governmental bodies or administrative tribunals involving acts of discre-

tion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; judicial discretion may not be substituted for administrative discretion.

Accord *Pennsylvania Social Services Local 668 v. Pennsylvania Labor Relations Board,* 481 Pa. 81, 392 A.2d 256, 259–260 (1978).

Our review of the record discloses that on April 14, 1979, the body of Russell Loomis was found shot to death in Springbrook Township, Lackawanna County. It was not until 1991 that a Lackawanna County grand jury began to hear testimony concerning the homicide.

One of the accused, Ronald Hull, testified before the grand jury that he was present before the April 11, 1979, murder took place. The other co-conspirators were Richard Young, George Cornell and the appellant. This group met to discuss how to rid themselves of Loomis, who, at the time, was cooperating with an FBI investigation involving the conspirators' business practices.

More specifically, Hull testified that on the day of the shooting, he saw Young, Cornell, Loomis and the appellant. It appears that, as a ruse, Loomis had been told by Hull and the others that he was going to be the recipient of a vehicle if he assisted in removing it from the woods. Hull also recalled that the group left a business establishment together and that Young informed Hull to take Loomis' vehicle to the Wyoming Valley Mall and leave it there. Young informed Hull to phone Young's brother-in-law to obtain a ride back from the mall.

Hull testified that he did as he was told and met Young and Cornell at Young's mother's home in Duryea, Pennsylvania, where Young and Cornell discussed the murder of Loomis.

With regard to the appellant's role in the murder, Hull indicated before the grand jury that the appellant was present at a business establishment when Young and Cornell left in Loomis' company on the night of the shooting. Hull further testified that the day following the incident the appellant informed him "its over we're safe" or words to that effect. Additionally, Hull disclosed that a few days prior to the killing, the appellant and Young were attempting to locate a pick and shovel in order to dig Loomis' grave. The grand jury, based on all the evidence received, recommended that Young and Cornell be charged with first and third degree murder and conspiracy to commit murder. As for the appellant and Hull, the grand jury recommended that they be charged with conspiracy to commit murder. This was approved by court order.

Procedurally, the grand jury's presentment was used as the factual basis for the affidavit of probable cause leading to the issuance of arrest warrants for the appellant and his co-conspirators. Of note, contrary to the grand jury's recommendation and the court's order that it be adhered to, the Commonwealth charged the appellant with first and third degree murder, as well as conspiracy.

At the preliminary hearing, after the Commonwealth rested its case, the appellant's motion to dismiss the first and third degree murder charges was granted, but the criminal conspiracy charge was held for court. Moreover, prior to the close of the hearing, the Commonwealth was permitted, over the appellant's objection, to amend the complaint to charge him with first degree murder as an accomplice and third degree murder as an accomplice.

Following hearings on the appellant's motion to quash the criminal information and his petition for habeas corpus, the court granted the petition and quashed the charges of accomplice to murder in the first and third degree. In opposition to

the action taken, the Commonwealth perfected the instant appeal and raises the following question:

WHETHER THE SUPERVISING JUDGE OF AN IN-VESTIGATIVE GRAND JURY HAS THE AUTHORITY TO PREVENT THE DISTRICT ATTORNEY FROM PROSECUTING A WRONGDOER TO THE FULLEST EXTENT OF THE LAW OR WHETHER THE USE OF THE PRESENTMENT OF THE GRAND JURY AS AN AFFIDAVIT OR PROBABLE CAUSE FOR AN ARREST WARRANT LIMITS THE COMMONWEALTH TO CHARGING ACCORDING TO THE RECOMMENDA-TION CONTAINED IN THE PRESENTMENT[?]

Before embarking on a resolution of the issues posed, we wish to present an historical and legislative overview of the role of the grand jury to appreciate its purpose in the criminal justice system.

The grand jury system, as an institution, has existed since 1166. *In re Grand Jury Proceedings,* 813 F.Supp. 1451, 1458 (D.Col.1992) (Footnote omitted). In England, for example, the grand juries functioned exclusively as the King's investiga-tory and accusatory arm. They were expected to reach out into the community, retrieve information of wrongdoing and report to the court. Indictments were based solely on the grand jurors' rendition of the local gossip, under oath, before a judge. See *Fields v. Soloff,* 920 F.2d 1114, 1117 (2nd Cir. 1990), citing R. Walker & M. Walker, *The English Legal System* 14–15 (1972). It is this historic practice of investigat-ing and generating accusatory reports, called "present-ments,"[1] which constitute what has come to be known as the grand jury's "sword" power. *Id.*

---

1. Grand juries issue both indictments and presentments. With indict-ments, the grand jury sets forth felony charges asserted by the govern-ment after finding probable cause that a person under investigation has committed the alleged crime. With presentments, the grand jury rec-ommends for prosecution charges it has initiated, or it issues reports condemning official misconduct not rising to the level of a criminal offense. See *Fields v. Soloff,* 920 F.2d 1114, 1117 n. 1 (2nd Cir.1990).

 Of interest is the fact that presentments, while provided for in the Fifth Amendment to the United States Constitution, are now considered

Slower to evolve was the role of the grand jury as a buffer against government prosecution—its "shield" function. In fact, in the Fourteenth century, grand juries were hearing charges brought by outside sources, listening to the evidence of others and witnesses of events under scrutiny. See P. Devlin, *Trial by Jury* 10–12 (1956). More specifically, deliberations began to focus on whether, not merely which, persons under government suspicion should be indicted. By the end of the Seventeenth century, the grand jury had matured into a independent and formidable power, i.e., juries refused to indict people perceived as innocent, despite intense pressure from the King. No longer instruments of the crown, they sought aggressively to defend against biased prosecutions. *Fields,* supra, 920 F.2d at 1117.

Grand jury practices expanded to the American colonies, where they devoted most of their time to indictments and presentments. See generally Younger, *The People's Panel: The Grand Jury in the United States, 1634–1941* (1963). However, it was the grand jury's power to thwart unwarranted government persecution of innocent citizens which our founding fathers sought to preserve in the Fifth Amendment to the United States Constitution, which reads: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." This provision has not been interpreted to confer plenary indictment power upon the grand jury. See *United States v. Cox*, 342 F.2d 167, 189 (5th Cir.) (en banc), cert. denied, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965). As such, because indictments wield the power to ruin lives and reputations, concert of action between the grand jury and the government attorney has been labelled a sound precondition. *Fields,* supra, 920 F.2d at 1117. Stated otherwise, "[t]he authority of the prosecutor to seek an indictment has long been understood to be "coterminous with the authority of the grand jury to entertain [the prosecutor's] charges.'" *United*

obsolete in the federal system, and they are no longer included by statute as a charging document. See *In re Grand Jury Proceedings,* 813 F.Supp. 1451, 1462 (D.Co.1992) (Citations omitted).

*States v. Williams,* —— U.S. ——, ——, 112 S.Ct. 1735, 1745, 118 L.Ed.2d 352 (1992), quoting *United States v. Thompson,* 251 U.S. 407, 414, 40 S.Ct. 289, 292, 64 L.Ed. 333 (1920). Nonetheless, the grand jury is an institution separate from the judicial branch, over whose functioning the courts do not preside, and this is "rooted in long centuries of Anglo–American history." See *Hannah v. Larche,* 363 U.S. 420, 490, 80 S.Ct. 1502, 1544, 4 L.Ed.2d 1307 (1960). In fact, the whole history of its function is that it belongs to no branch of the institutional government, serving as a kind of buffer or referee between the Government and the people. See *United States v. Williams,* supra, —— U.S. at ——, 112 S.Ct. at 1742 (Citations omitted), wherein it is written that:

> The grand jury's functional independence from the judicial branch is evident both in the scope of its power to investigate, criminal wrongdoing, and in the manner in which the power is exercised. "Unlike [a] [c]ourt, whose jurisdiction is predicated upon a specific case or controversy, the grand jury 'can investigate merely on suspicion that the law is being violated, or even because it wants assurance that it is not.'" It need not identify the offender it suspects, or even "the precise nature of the offense" it is investigating. The [federal] grand jury requires no authorization from its constituting court to initiate an investigation, nor does the prosecutor [at the federal level] require leave of court to seek a grand jury indictment. And in its day-to-day functioning, the grand jury generally operates without interference of a presiding judge. It swears in its own witnesses, and deliberates in total secrecy.

At the state level, however, the grand jury process varies with the jurisdiction. This is the result of the Fifth Amendment right to indictment by a grand jury not being incorporated by the Due Process Clause of the Fourteenth Amendment, and, accordingly, does not pertain to the states. See *Hurtado v. California,* 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884); *Fields v. Soloff,* supra, 920 F.2d at 1118.

In this Commonwealth, presently, the use of the grand jury as a tool to inquire into organized crime, public corruption or

the commission of specific crimes by specific persons is contained in the Investigative Grand Jury Act (hereinafter the Act [2]).

The Act permits the impanelling of a grand jury on the initiative of an attorney for the Commonwealth (as was the case here), and the assignment of a judge of the county in which the jury was raised to supervise the investigating grand jury. 42 Pa.C.S.A. § 4543(b). The grand jury has the power to compel attendance of witnesses to give testimony under oath, to initiate contempt proceedings and require the production of documents, records and other evidence. *Id.* at § 4542. Further, the grand jury is to be composed of twenty-three members and a majority of the full jury shall be required to adopt a report or issue a presentment. As to the issuance of a presentment, the Act provides:

(a) General rule.—Should the investigating grand jury determine that upon the basis of evidence presented to it a presentment should be returned against an individual, the grand jury shall direct the attorney for the Commonwealth to prepare a presentment which shall be submitted to the investigating grand jury for a vote. Should the majority of the full grand jury vote approval for the presentment it shall then be submitted to the supervising judge. The supervising judge shall examine the presentment, and if it is within the authority of the investigating grand jury and is otherwise in accordance with the provisions of this subchapter, the supervising judge shall issue an order accepting the presentment. Otherwise, the supervising judge shall refuse to accept the presentment and shall order that the investigating grand jury take further appropriate action.

(e) Procedure following presentment.—When the attorney for the Commonwealth proceeds on the basis of a presentment, a complaint shall be filed and the defendant shall be entitled to a preliminary hearing as in other criminal proceedings.

2. Act of October 5, 1980, P.L. 693, No. 142, § 216(a)(2), 42 Pa.C.S.A. § 4541 et seq.

Act of October 5, 1980, P.L. 693, No. 142, § 216(a)(2), 42 Pa.C.S.A. § 4551(a), (e).

As is evident under the Act, "an investigating grand jury is an arm of the court, [and] in this Commonwealth is judicially supervised from its inception contrary to the practice in most jurisdictions, and is strictly regulated in the scope of its inquiry." *Commonwealth v. McCloskey*, 443 Pa. 117, 277 A.2d 764, 775 (1971). The reason for such supervision is a concern for urgency in resolving the commission of criminal activity or avoidance of delays incident to the ordinary forms of the law. *Id.*

Nonetheless, this does not detract from the fact that "the presentment of an investigating grand jury does not formally charge a named person with the commission of a specific criminal act; it is a written formal *recommendation* by an investigating grand jury that specific persons be charged with specific crimes." P.L.E. Indictment and Information, § 23 at 203 (Footnote omitted; emphasis added). The ultimate determination of whom to charge and what to charge, however, is reserved specifically to the Commonwealth (via the District Attorney):

A judge in our system does not have the authority to tell prosecutors which crimes to prosecute or when to prosecute them. Prosecutorial discretion resides in the executive, not in the judicial, branch, and that discretion, though subject of course to judicial review to protect constitutional rights, is not reviewable for a simple abuse of discretion. *Wayte v. United States*, 470 U.S. 598, 607–08, 105 S.Ct. 1524, 1530–31, 84 L.Ed.2d 547 (1985); *United States v. Schwartz*, 787 F.2d 257, 266–67 (7th Cir.1986). This principle is most often invoked when the issue is whom to prosecute, as in *Wayte v. United States, supra, Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962), and *United States Labor Party v. Oremus*, 619 F.2d 683, 690–91 (7th Cir.1980), but it has equal force when the issue is which crimes of a given criminal to prosecute. *Bordenkircher v. Hayes*, 434 U.S. 357, 374, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978); *United States v. Goodwin*, 457 U.S. 368, 382, 102 S.Ct. 2485,

2493, 73 L.Ed.2d 74 (1982); *United States v. Smith,* 953 F.2d 1060, 1064 (7th Cir.1992).

*United States v. Giannattasio,* 979 F.2d 98, 100 (7th Cir.1992). Stated otherwise:

> The question whether to proceed with a prosecution is for the Executive Branch and the grand jury alone. Selection of the charge is a central part of the executive function.

*United States v. Schwartz,* 787 F.2d 257, 266 (7th Cir.1986). Accord *United States v. Nixon,* 418 U.S. 683, 693, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *United States v. Carrasco,* 786 F.2d 1452, 1455 (9th Cir.1986); *United States v. Miller,* 722 F.2d 562, 565 (9th Cir.1983); *United States v. Cyprian,* 756 F.Supp. 388, 391 (N.D.Ind.1991); *Commonwealth v. Spells,* 417 Pa.Super. 233, 612 A.2d 458, 465 (1992); *Commonwealth v. Amundsen,* 416 Pa.Super. 464, 611 A.2d 309, 311 (1992); *Commonwealth v. Buonopane,* 410 Pa.Super. 215, 599 A.2d 681, 684 (1991); *Commonwealth v. Mallon,* 356 Pa.Super. 493, 515 A.2d 1, 4 (1986); *Commonwealth v. Eisemann,* 276 Pa.Super. 543, 419 A.2d 591, 592 (1980).

The discretion of whom to prosecute and what offense(s) to charge is rooted in the separation of governmental powers doctrine, see *United States v. DeBright,* 730 F.2d 1255, 1257 (9th Cir.1984); *United States v. Miller,* supra, and is a broad authority to be judged under a more than simple abuse-of-discretion standard. See *Pennsylvania Social Services Local 668,* supra (judicial review limited to a manifest and flagrant abuse of discretion); *In re Wood,* 333 Pa.Super. 597, 482 A.2d 1033, 1036 (1984) ("... a court should not interfere with the exercise of prosecutorial discretion under Rule 133 [Approval of Private Complaints] unless there has been a gross abuse of discretion." (Citation omitted)).

■ Further, and more importantly, it is beyond cavil that: "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely

in his discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978).

*Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985); *United States v. Ucciferri,* 960 F.2d 953, 954 (11th Cir.1992); cf. *Commonwealth v. Eisemann,* supra, 276 Pa.Super. at 545, 419 A.2d at 592 ("This discretionary power of the District Attorney in determining whether prosecution shall be commenced or maintained may well depend on matters of policy wholly separate and apart from the existence or nonexistence of probable cause."); *United States v. Miller,* supra, 722 F.2d at 565 n. 3 ("... prosecutors can bring charges so long as the charge is supported by probable cause...." (Citation omitted)); *United States v. Cyprian,* supra (semble).

 Instantly, we had compliance with the Act, i.e., impanelling of investigating grand jury on petition of the District Attorney, the taking of testimony, the preparation of a presentment, approval for the same obtained from the supervising judge and preparation of a criminal complaint in compliance therewith. It was only with the amendment of the criminal complaint, which occurred following the Commonwealth's case in chief but before the close of the preliminary hearing, that we have a challenge to the propriety of the Commonwealth's modification of the probable cause document from one charging murder in the first and third degree to that of murder in the first and third degree as an accomplice. These amended charges, as well as the initial criminal conspiracy offense, were held for court by the district justice and were followed by the issuance of an information by the District Attorney formally charging the appellant accordingly.

Interestingly, unlike the appellant, we find a resolution of the case to revolve around whether and to what extent a criminal complaint may be amended by the Commonwealth, and not whether an information may be amended, since at the stage the amendment was effectuated came about prior to the conversion of the complaint into a criminal information by the District Attorney.

Under Pa.R.Crim.P. 150 and the *Comment* thereto, we learn that:

A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, summons, or warrant, or a defect in the procedures of this chapter, unless the defendant raises the defect before the conclusion of the preliminary hearing *and the defect is prejudicial to the rights of the defendant.*

\* \* \* \* \* \*

### Comment

The 1981 amendment is intended to clarify when a defendant should be discharged or a case dismissed because of a defect; it eliminates disputes as to what is an informal defect or a substantive defect. Under the amendment, as a condition of relief *regardless of whether the defect is in form, content, or procedure, the court or issuing authority must determine that there is actual prejudice to the rights of the defendant.*

*A complaint, summons or warrant may be amended at any time so as to remedy any defect in form or content that is not prejudicial to the rights of the defendant.* Nothing in this rule shall prevent the filing of a new complaint and the reissuance of process. Any new complaint must be filed within the time permitted by the applicable statute of limitations. [Emphasis added]

Contrast Pa.R.Crim.P. 229 (amendment of information permitted "provided the information as amended does not charge an additional or different offense."); P.L.E. Indictment and Information, § 7.

Under the predecessor to the present Rule 150,[3] the omission of an offense from a complaint constituted a "substantial

---

3. Prior to the 1982 amendment, Rule 150 provided:
 Defects in Complaint, Citation, Summons or Warrant
 (a) Informal Defects:
 No person arrested under a warrant or appearing in response to a summons or citation shall be discharged from custody nor shall any case be dismissed because of any informal defects in the complaint, citation, summons, or warrant, but the complaint, citation, summons

defect" which could not be remedied by merely amending the complaint. *Commonwealth ex rel. Fitzpatrick v. Mirachi*, 481 Pa. 385, 392 A.2d 1346, 1348 (1978). The result would be a discharge of the defendant, with the option of filing a new complaint and the issuance of process in which the defect was corrected. The present Rule 150 has eliminated the necessity to determine what is an "informal" versus a "substantive" defect (be it in form, content or procedure) and allows for a discharge of the defendant or a dismissal of some or all of the case only if it is shown to the court or issuing authority that "there is actual prejudice to the rights of the defendant."

As our Supreme Court stated in *Commonwealth v. Revtai*, 516 Pa. 53, 532 A.2d 1 (1987), Rule 150 does not adopt the application of per se remedies for technical violations. The Rule demands a showing of prejudice by the defendant before a dismissal (or, as in this case, a quashal by the court) of, e.g., murder of the first and third degree as an accomplice can take place as did below. For such to occur, however, "such prejudice must be beyond the inherent prejudice of being subject to a criminal prosecution." *Commonwealth v. Zook*, 532 Pa. 79, 615 A.2d 1, 6 (1992).

This element of "prejudice" may be ascertained with inquiry into the purpose behind the prohibition against "substantive changes", i.e., "to 'assure that the defendant receives proper notice of the charges filed against him and to allow him time to properly prepare his case.'" *Commonwealth v. Thomas*, 278 Pa.Super. 39, 419 A.2d 1344, 1349 (1980) (Citations omitted).

"The *substance* of a case is a fair trial on the merits in the proper court; all else is *form*, whose function is but to serve the end of a fair trial on the merits. In this endeavor, the

or warrant, may be amended at any time so as to remedy any such informality.

(b) Substantive Defects:

If a complaint, citation, summons or warrant contains a substantive defect, the defendant shall be discharged unless he waives the defect. Nothing in this rule shall prevent the filing of a new complaint or citation and the issuance of process in which the defect is corrected in a proper manner.

office of the pleading[, e.g., citation, complaint or information] is simply to inform the accused of 'the nature and cause of the accusation' against him, as constitutionally required as a matter of due process of law. *It is only when the pleading fails to advise the defendant in advance of trial of the issues he must meet and harms or handicaps him in his effort to defend himself, that the content of pleadings impinges on substance.* All other pleading errors and omissions are 'informal' and may be amended or disregarded."

*Commonwealth v. Lyons*, 10 D. & C.3d 103, 106 (Somerset Cty., 1978) (Emphasis added). Further, in resolving the matter at hand, we are guided by this Court's remarks in *Commonwealth v. Fuller*, 396 Pa.Super. 605, 579 A.2d 879 (1990), which assessed the defendant's challenge to the court's allowance of an amendment to a criminal information; to-wit:

While we agree with appellant that aggravated assault is not a lesser included offense of criminal attempt of murder, we are convinced the lower court correctly permitted the information to be amended. In reviewing the validity of an amendment to a criminal information, we look more to substantial justice than to technicalities. *Commonwealth v. Hulehan*, 338 Pa.Super. 309, 487 A.2d 980 (1985). Instantly, the trial court allowed amendment of the information to include the charge of aggravated assault *prior to trial.* Although this was a case of an eleventh hour amendment, the Court offered appellant the opportunity to request a continuance to prepare to meet the new charge.... The charge of aggravated assault and criminal attempt murder arose out of the same set of facts. And, under the particular facts of this case, the crimes charged involved the same basic elements.[6] Thus, appellant was placed on notice of his criminal conduct and was not prejudiced by the amendment. Even though the present amendment was substantive in that it changed the grade of the offense charged, *Commonwealth v. Gray*, 329 Pa.Super. 347, 353–54, 478 A.2d 822, 825 (1984), we will permit the amendment.[7]

6. ... [W]e reiterate that generally aggravated assault is not a lesser included offense of criminal attempt (murder). However, we are not applying the merger test herein. Rather, our purpose is to determine, under the particular facts of this case, whether appellant was placed on notice of his criminal conduct and whether appellant was prejudiced by the last minute addition. *Commonwealth v. Stanley, supra* [265 Pa.Super. 194, 401 A.2d 1166 (1979)].

7. Substantive amendments have been allowed in the past. See *Commonwealth v. Jones*, 319 Pa.Super. 570, 466 A.2d 691 (1983) (change in grade of criminal mischief permissible; amendment made prior to trial); *Commonwealth v. Womack*, 307 Pa.Super. 396, 453 A.2d 642 (1982) (adding criminal charges to information on day of trial permissible where no showing of prejudice, no request for continuance)....

396 Pa.Super. 605 at 616 nn. 6 & 7, 579 A.2d at 885 nn. 6 & 7 (Footnotes omitted).

As in *Fuller*, the amendment (to the complaint here, which was reflected in the criminal information later) occurred *prior to trial* and the additional (accomplice) charges arose out of the same set of facts as the charges in the original complaint. For instance, the original complaint charged the appellee with murder in the first and third degree and criminal conspiracy. The facts underlying the "affidavit of probable cause" section of the complaint referred to the grand jury's presentment as establishing probable cause to arrest the appellee for the charges listed. *These same set of facts* were the predicate for the requested amendment seeking to charge the appellee as an accomplice to murder in the first and third degree.[4]

Therefore, we find that the crimes charged in the amended complaint evolved out of the same factual situation as the one

4. We have reviewed the applicable sections of the Crimes Code and note that the first and third degree murder charges and the first and third degree murder accomplice offenses constitute felonies of the first degree. See 18 Pa.C.S.A. §§ 2502, 306(c)(1)(ii); see also *Commonwealth v. Bricker*, 525 Pa. 362, 581 A.2d 147 (1990). And, although establishing a defendant's guilt on an accomplice theory does not require proof of an agreement as conspiracy does, see *Commonwealth v. Graves*, 316 Pa.Super. 484, 463 A.2d 467, 470 (1983), each offense requires proof of "shared criminal intent" to establish one's guilt. See *Commonwealth v. Cox*, 466 Pa. 582, 353 A.2d 844 (1976). The point to be made is that the original complaint and amended complaint *shared* sufficient components, e.g., factual origin, that the appellee cannot argue successfully that he is prejudiced by the allowance of the amendment, coming as it did prior to trial so as not to impair his ability to defend against the charges.

specified in the original complaint, and, albeit the change was substantive, it took place at a point in the criminal justice continuum to afford the appellee notice of his criminal conduct and time to prepare his case for trial. *Id.* As such, we discern no prejudice to the appellee in allowing the amendment to the criminal complaint. Cf. *Commonwealth v. Fuller*, supra.

Additionally, recall the broad discretion vested solely in the District Attorney as to whom to prosecute and what charge(s) to level are conditional upon the presence of *probable cause* to believe that the accused committed an offense defined by statute. See *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978); *United States v. Ucciferri*, supra. With that as a backdrop, and from our examination of the grand jury's presentment (as the underpinnings for the original and amended complaints), there would appear to be sufficient information to conclude that a crime has been committed and that there is probable cause to believe that it was committed by the accused and his cohorts. Cf. *Commonwealth v. Bardascino*, 210 Pa.Super. 202, 232 A.2d 236, 240 (1967) (arrest warrant context); *Commonwealth v. Ametrane*, 205 Pa.Super. 567, 210 A.2d 902, 904 (1965) (semble); P.L.E. Criminal Law, § 171. It will be for a finder-of-fact to make the ultimate determination of innocence or guilt. Cf *Commonwealth v. Woodward*, 418 Pa.Super. 218, 614 A.2d 239, 242 (1992) (where conflicting evidence exists, the trier-of-fact is free to believe all, part, or none of the evidence presented).[5]

At bar, there has been no allegation by appellee that the criminal information did not sufficiently allege a violation of the Crimes Code, nor have we been directed to any authority to support the quashal of the criminal information as to the accomplice charge tied to murder in the first and third degree. To the contrary, *Commonwealth v. Fuller*, supra, could be read to approve the amendment by extending its rationale to the investigative grand jury arena provided it occurs prior to trial, as was the case here, and provides notice of the

---

5. We make mention of the credibility question because the appellee recites in his appellate brief at 24–28 that Ronald Hull lied at the preliminary hearing. This would be for the trier-of-fact to assess.

new/amended charges against the accused. Extending *Fuller* to its logical perimeters, we find it persuasive in sustaining the District Attorney's efforts to issue a criminal information not in total accord with the grand jury presentment.

To elaborate, the presentment of an investigative grand jury is a written formal *recommendation,* see 42 Pa. C.S.A. § 4542, with the power to indict being withheld specifically from that same body, *id.* at § 4548(c), and reserved to the prosecutor. See *Wayte v. United States,* supra, 470 U.S. at 608, 105 S.Ct. at 1531; *United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982); *Commonwealth v. Spells,* supra; *Commonwealth v. Amundsen,* supra. Accordingly, we hold that, reading the Act to give effect to all of its provisions without doing violence to the traditional prosecutorial role of the District Attorney in the criminal justice system, the District Attorney is the final arbiter of the content of the indicting document. Appellate review will be available to assess whether the discretion of the prosecutor has been abused in performing his executive function to issue indicting documents. See *Pennsylvania Social Services Local 688,* supra.

We find no such abuse here, and, thus, to remedy the lower court's refusal to allow the issuance of a criminal information not on all fours with the investigating grand jury's presentment, we reverse the order of the court so directing and remand for the allowance of the criminal information intended to be issued by the District Attorney of Lackawanna County.[6]

Order reversed, case remanded for proceedings consistent with this opinion, and jurisdiction is relinquished.

WIEAND, J., concurs in the Result.

6. As an aside, it needs to be mentioned that, from our examination of the record, there is no indication that the district justice's allowance of an amendment to the criminal complaint was objected to by the appellee. This is contrary to Pa.R.Crim.P. 150, which provides in the *Comment* section that such matters "shall be specifically described on the docket by the issuing authority." See *Commonwealth v. Lockett,* 31 D. & C.3d 115 (Somerset Cty., 1984). The absence of the appellee's objection to the amendment not being noted on the docket does not alter our ultimate disposition.