

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-2003

# Camiolo v. State Farm Cslty Co

Precedential or Non-Precedential: Precedential

Docket No. 02-1603

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Camiolo v. State Farm Cslty Co" (2003). *2003 Decisions.* Paper 394.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/394

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed June 30, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 02-1603

_____

PAUL CAMIOLO, INDIVIDUALLY AND
AS ADMINISTRATOR OF THE ESTATE
OF EDWARD P. CAMIOLO, DECEASED;
PAUL CAMIOLO, INDIVIDUALLY AND
AS EXECUTOR OF THE ESTATE OF
ROSALIE CAMIOLO, DECEASED

v.

STATE FARM FIRE AND CASUALTY CO.; LEE AFFEL,
Individually and as Agent, Servant, Workman or
Employee of State Farm Fire and Casualty Co.;
J. WHELAN, Individually and as Agent, Servant,
Workman or Employee of State Farm Fire and
Casualty Co.; KAREN RATCLIFFE, Individually
and as Agent, Servant, Workman or Employee
of State Farm Fire and Casualty Co.;
C. CLARK, Individually and as Agent, Servant,
Workman or Employee of State Farm Fire and
Casualty Co.; DON HULLENBAUGH, Individually
and as Agent, Servant, Workman or Employee of
State Farm Fire and Casualty Co.; D. MURPHY,
Individually and as Agent, Servant, Workman
or Employee of State Farm Fire and Casualty
Co.; A. BOWLES, Individually and as Agent,
Servant, Workman or Employee of State
Farm Fire and Casualty Co.;
G. WILAND, Individually and as
Agent, Servant, Workman or Employee of State
Farm Fire and Casualty Co.; ALEX SUTHERLAND,

Individually and as Agent, Servant, Workman or Employee of State Farm Fire and Casualty Co.; STEVEN J. BENEDEK, Individually and as Agent, Servant, Workman or Employee of State Farm Fire and Casualty Co.; TOWNSHIP OF UPPER MORELAND; TOWNSHIP OF UPPER MORELAND POLICE DEPARTMENT; EDWARD O. STAUCH, JR., Individually and as Agent, Servant, Workman or Employee of Upper Moreland Township Police Department and/or Township of Upper Moreland; ROBERT P. KERRIGAN, Individually and as Agent, Servant, Workman or Employee of Upper Moreland Township Police Department and/or Township of Upper Moreland; RICK TIDWELL, Individually and as an Agent, Servant, Workman or Employee of Upper Moreland Township Police Department and/or Township of Upper Moreland; TOWNSHIP OF UPPER MORELAND FIRE DEPARTMENT; THOMAS M. SULLIVAN, Individually and as Agent, Servant, Workman or Employee of Township of Upper Moreland and/or Township of Upper Moreland Fire Department; TROOPER INVESTIGATIVE SERVICES; GEORGE L. WERT, Individually and as an Agent, Servant, Workman or Employee of Trooper Investigative Services; PETER C. MINZOLLA, Individually and as Agent, Servant, Workman or Employee of Trooper Investigative Services; MICHAEL MATELESKA, Individually and as Agent, Servant, Workman or Employee of Trooper Investigative Services; ROBERT H. JONES ASSOCIATES, INC.; WALTER KERR, Individually and as Agent, Servant, Workman or Employee of Robert H. Jones Associates, Inc.

PAUL CAMIOLO, individually and as Administrator of the Estates of Edward P. Camiolo, Deceased and Rosalie Camiolo, Deceased, Appellant

———————

On Appeal from the United States District Court for the Eastern District of Pennsylvania (D.C. No. 00-cv-3696) District Judge: The Honorable Harvey Bartle, III

———————

Argued: April 3, 2003

Before: McKEE, SMITH, *Circuit Judges*, and
HOCHBERG, *District Judge**

(Filed: June 30, 2003)

Joseph R. Viola, Esquire (argued)
Suite 702
1528 Walnut Street
Philadelphia, PA 19102

Attorney for Appellants

Joseph D. Mancano, Esquire
Britt, Hankins, Schaible & Moughan
Two Penn Center Plaza
Suite 515
Philadelphia, PA 19102

Attorney for Appellees State Farm
Fire & Casualty Company, Lee
Affel, J. Whelan, Karen Ratcliffe,
C. Clark, Don Hullenbaugh, D.
Murphy, A. Bowles, G. Wiland,
Alex Sutherland, and Steven J.
Benedek

Joseph J. Santarone, Jr., Esquire,
 (argued)
Marshall, Dennehey, Warner,
 Coleman & Goggin
One Montgomery Plaza
10th Floor
Norristown, PA 19401

---

* The Honorable Faith Hochberg, District Judge for the United States
District Court for the District of New Jersey, sitting by designation.

Charles W. Craven, Esquire
Marshall, Dennehey, Warner,
 Coleman & Goggin
21st Floor
1845 Walnut Street
16th Floor
Philadelphia, PA 19103

> Attorneys for Appellees Township
> of Upper Moreland, Upper
> Moreland Police, Edward O.
> Stauch, Jr., Robert P. Kerrigan,
> Upper Moreland Fire, Thomas M.
> Sullivan, Rick Tidwell

Carla P. Maresca, Esquire
Deasey, Mahoney & Bender
1800 John F. Kennedy Boulevard
Suite 1300
Philadelphia, PA 19103-2978

> Attorney for Appellees Trooper
> Investigative Services, George L.
> Wert, Peter C. Minzolla, Michael
> Mateleska,

---

## OPINION OF THE COURT

SMITH, *Circuit Judge*:

Paul Camiolo ("Camiolo") was arrested for, *inter alia*, the arson murder of his parents, Edward and Rosalie Camiolo, and detained for approximately ten months. After the charges were dismissed, Camiolo filed this action against State Farm Fire and Casualty Co. ("State Farm") and numerous individuals who had been involved in the investigation of the cause and origin of the fire.[1] His

---

1. Paul Camiolo initiated this action on his own behalf and on behalf of the estates of his parents, Edward and Rosalie Camiolo. The record reveals that Camiolo made no distinction between his claims and the claims of the two estates. Furthermore, he offered no proof in support of the estates' claims. For that reason, we discuss all the claims as one.

complaint alleged claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, violations of his civil rights under 42 U.S.C. § 1983, and various state law causes of action.

At the conclusion of discovery, the District Court denied a motion by Camiolo to compel production of transcripts of testimony that the defendants had given before a state grand jury. The District Court granted summary judgment in favor of the defendants on all claims. Although we affirm the District Court's order denying the motion to compel production of the grand jury testimony, we do so for reasons other than those stated by the District Court. As we explain below, the District Court should first have given the Court of Common Pleas an opportunity to pass upon the request for access to transcripts from a county investigating grand jury convened under state law. We also affirm the orders granting summary judgment for the defendants on all of Camiolo's federal and state law claims.

I. *Facts and Procedural History*

On September 30, 1996, the house where Camiolo resided with his parents, Edward and Rosalie Camiolo, was damaged by fire. According to Camiolo, the fire started in the living room sofa on which his mother was sleeping. Although Camiolo escaped from the house without injury, his father died in the fire and his mother died several months later as a result of the injuries she sustained during the fire.

State Farm insured the Camiolo residence against fire loss.[2] An entry in State Farm's claim activity log dated September 30 indicated that the cause of the fire "was due to careless smoking" and that efforts would be made to obtain a copy of the fire marshal's report. Yet Upper Moreland Township police and fire officials, who initiated an investigation, suspected that Camiolo had, by incendiary means, intentionally started the fire. That investigation eventually

---

2. The record does not include a copy of the insurance policy. A claim committee report, however, indicates that Edward and Rosalie Camiolo were the named insureds and that the limits of liability were $163,840 for the dwelling and $122,882 for the contents.

led to a request by the District Attorney of Montgomery County that the Court of Common Pleas of that county convene an investigating grand jury pursuant to Pennsylvania's Investigating Grand Jury Act. 42 Pa.C.S.A. §§ 4541-4553. The District Attorney's request was granted, and a county investigating grand jury met to hear evidence on ten separate occasions between August 13, 1998 and January 14, 1999.

State Farm had also initiated an investigation into the cause and origin of the fire, hiring Walter Kerr, an employee of Robert H. Jones Associates, Inc. to conduct an investigation and submit a report. Kerr opined in March 1997 that the "fire was intentionally set and accelerated by the use of gasoline." Thereafter, State Farm refused to pay Camiolo's claim for losses caused by the fire. In response, Camiolo filed suit in November 1997 in state court alleging that State Farm had breached its contract of insurance. State Farm subsequently removed the suit to the United States District Court for the Eastern District of Pennsylvania. *See Paul Camiolo v. State Farm Fire & Casualty Co.*, Civil Action No. 97-8057 (E.D. Pa.).

In late September 1998, while the grand jury was still conducting its investigation, State Farm initiated discussions with Camiolo's counsel which eventually led to settlement of the initial civil suit seeking payment of the fire loss claim. Camiolo signed a release on October 15, 1998 in exchange for $240,000. The release provided, in relevant part, as follows:

> The undersigned, PAUL CAMIOLO on his own behalf and as Administrator of the Estate of Edward Camiolo, Deceased, and Executor of the Estate of Rosalie Camiolo, Deceased (hereinafter referred to as Releasors) declares that, for and in consideration of TWO HUNDRED FORTY THOUSAND DOLLARS ($240,000) . . . does forever release, acquit and discharge STATE FARM FIRE & CASUALTY COMPANY, its . . . employees and agents . . . of and from any and all actions, causes of actions, claims, demands, damages resulting or to result from a fire which occurred on or about September 30, 1996 at 4130 Hoffman Road, Hatboro, Pennsylvania, which became

the subject of a property damage claim filed with State Farm . . . which claim is fully settled and satisfied by virtue of the above-mentioned sum paid.

It is further understood and agreed that Releasors hereby discharge Releasees of and from any and all actions, causes of actions, claims, demands or damages, including claims for contractual and extra-contractual damages and claims for personal injury and emotional distress, and for any damages which may develop at some time in the future, and for any damages relating to the claims handling in connection with this matter, including bad faith, and for any and all unforeseen developments arising out of the incident referred to above, including any and all claims which were the subject matter of a lawsuit pending in the United States District Court, for the Eastern District of Pennsylvania, styled *Paul Camiolo v. State Farm Fire & Casualty Co.*, Civil Action No. 97-8057 . . . .

PAUL CAMIOLO hereby declares that the terms of this Release and Settlement Agreement have been completely read; and that said terms are fully understood and voluntarily accepted for the purpose of making a full and final compromise of any and all claims on account of the damages and losses mentioned above and further for the express purposes of precluding forever any further or additional suits by Releasors or any of them arising out of the aforesaid claims.

When Camiolo executed the release, he knew that he was the target of the investigation being pursued by the state grand jury. In an affidavit submitted to the District Court in support of his claims in this action, Camiolo acknowledged that he had discussed with his attorney in the insurance action that he might not "have the resources necessary to defend" himself in a criminal prosecution. The settlement Camiolo contemplated, however, would provide a means "to start hiring experts to prove the fire . . . was accidental in origin."

In mid January 1999, the county investigating grand jury returned a presentment concluding that Camiolo was

responsible for the arson-homicide of his parents.[3] The twenty-three page presentment described in detail the responding police officer's observations at the scene, including her conversations with Camiolo and her discovery of an unattended Rosalie Camiolo lying several feet from the back door of the house. Five pages of the presentment concerned Camiolo's "Contradictory Versions of the Fire," discussing statements made by Camiolo about his whereabouts at the time the fire was discovered, his discovery of the fire, the cause of the fire, the alleged attempts to fight the fire, and his escape from the house.

Thirteen pages of the presentment discussed the forensic evidence, including the laboratory testing of samples of hardwood flooring and other debris which revealed the presence of partially evaporated gasoline. This section also identified several individuals who testified and the nature of their testimony. The testimony described in the presentment included not only that of professionals who opined that the cause and origin of the fire was incendiary, but also that of Agent Avato of the Bureau of Alcohol, Tobacco and Firearms, who opined that the fire was accidental.

The presentment concluded that there was "probable cause to believe that the fire at 4130 Hoffman Road was set by Paul Camiolo through the use of one or more flammable liquids which he poured in the family room of the house and then ignited with an open flame." The grand jury, through its presentment, recommended that the Montgomery County District Attorney charge Camiolo with various offenses, including the arson murder of his parents.

On January 19, 1999, Judge Albert R. Subers, the supervising judge of the grand jury,[4] accepted the

---

3. In Pennsylvania, a presentment is a written document returned by an investigating grand jury that, based on the evidence presented to it, recommends that the individual under investigation be formally charged with the commission of a particular criminal offense(s). *See Commonwealth v. Slick*, 639 A.2d 482, 484 n.1, 486 (Pa. Super. Ct. 1994); 42 Pa.C.S.A. § 4551(a).

4. Pennsylvania's Investigating Grand Jury Act defines the "supervising judge" as the "common pleas judge designated by the president judge to

presentment and referred the matter to the District Attorney. After the District Attorney charged Camiolo with several criminal offenses, he was arrested and detained pending trial for approximately ten months.

In early October 1999, John Lentini, an expert retained by Camiolo, submitted a report to Camiolo's counsel which indicated, *inter alia,* that the laboratory samples of hardwood flooring contained gasoline and lead. He explained that lead was not a natural component of wood finishing, but that it had been a natural component of gasoline prior to the early 1980s. As a result, Lentini opined that the gasoline in the samples was old and that it had not been used to set the fire. After considering Lentini's report and confirming his methodology, and taking into account the results of further tests on fabric similar to that on furniture in the Camiolo house together with the fact that State Farm had settled Camiolo's insurance claim, the District Attorney dismissed the charges against Camiolo. Camiolo was released from custody in late October 1999.

In July 2000, Camiolo filed the civil suit from which the instant appeal arises, alleging RICO violations against State Farm and several of its agents, several Upper Moreland Township police and fire officials involved in the investigation (collectively referred to hereafter as "Upper Moreland Township defendants" or "municipal defendants"), and Trooper Investigative Services and several of its agents (collectively referred to as "TIS"), who also were involved in preparing certain investigative reports.[5] *See* 18 U.S.C.

---

supervise the activities of the county investigating grand jury[.]" 42 Pa.C.S.A. § 4542. Under the Pennsylvania Rules of Criminal Procedure, the supervising judge administers oaths to the stenographer, the court personnel, grand jurors and witnesses, Pa. R. Crim. P. 223, 224, 225, 227, administers a charge to the grand jury describing their duties, Pa. R. Crim. P. 226, and also determines whether interpreters, security officers or other persons may be present while the grand jury is in session. Pa. R. Crim. P. 231. In addition, the supervising judge controls all copies of the grand jury transcripts to maintain their confidentiality. Pa. R. Crim. P. 229.

5. Camiolo also named Robert H. Jones Associates, Inc. and Walter Kerr as defendants, presumably because Kerr had conducted an inspection of the site of the fire. These defendants were never served and the District Court dismissed Camiolo's claims against them for lack of prosecution on January 25, 2002. They are not parties to this appeal.

§ 1962. The complaint further alleged a § 1983 claim that these same defendants violated Camiolo's constitutional rights. *See* 42 U.S.C. § 1983. In addition, Camiolo alleged that State Farm, together with several other defendants, was liable for false arrest (Count III), false imprisonment (Count IV), assault and battery (Count V), intentional infliction of emotional distress (Count VI), negligent infliction of emotional distress (Count VII), civil conspiracy (Count VIII), bad faith (Count IX), violation of the Unfair Trade Practices and Consumer Protection law (Count X), and punitive damages (Count XI) under Pennsylvania law.

By Memorandum and Order dated March 18, 2001, the District Court granted summary judgment for State Farm and its employees on all counts on the basis of the release that Camiolo had executed in settling the underlying breach of insurance contract claim. Shortly thereafter, the District Court entered an order directing that discovery on the remaining claims had to be completed by December 31, 2001.

At some point during discovery, Camiolo requested that the municipal defendants and TIS provide him with copies of the transcripts of their grand jury testimony. The record does not indicate whether this was an informal request or a request under Federal Rule of Civil Procedure 34 for the production of documents. In any event, purportedly lacking copies of those transcripts, the municipal defendants and TIS were unable to comply with the request.

Thereafter, the District Court suggested that Camiolo's counsel contact the District Attorney of Montgomery County to obtain the transcripts. Camiolo's counsel followed this suggestion and by letter dated November 27, 2001 inquired whether the District Attorney would object to the issuance of a subpoena for the grand jury testimony. In response, the District Attorney advised Camiolo that Pennsylvania Rule of Civil Procedure 230 governed whether he could disclose the transcripts at issue.[6] The District

6. Rule 230 provides for the disclosure of testimony before an investigating grand jury to the attorney for the Commonwealth "for use in the performance of official duties." Pa. R. Crim. P. 230(A). Subsection

Attorney informed Camiolo that, in light of that rule, and "contrary to my initial inclination, I conclude that Pennsylvania Law prohibits me from disclosing grand jury transcripts as part of a civil case."

When the District Attorney refused to voluntarily produce the investigating grand jury transcripts, Camiolo applied to the District Court, a week before the close of discovery, to compel their production, asserting that "at least one of the defendants has raised the Grand Jury Indictment as a defense." Camiolo asserted that "[p]ermitting the disclosure would insure consistent and complete testimony by the witnesses since, the Grand Jury testimony was given in 1998, three years ago." In addition, he argued that "disclosure . . . far out weighs any continued [n]eed of secrecy given the age of the Grand Jury." Disclosure was necessary, in Camiolo's view, because he believed that the transcripts would "show that the Grand Jury indictment was obtained through fraud or other undue influences at work." Camiolo argued that "[a]s a result of this matter being placed in the Federal Court, the State Court overseeing the Grand Jury investigation is no longer the guardian of the Grand Jury transcripts."

The Upper Moreland defendants opposed Camiolo's request. Their counsel acknowledged in their response to the motion that he had been granted access to the entire investigative file of the Montgomery County Detective's Office, which contained some grand jury transcripts. However, he averred that he had not made copies of any of these transcripts, that he had no intent to use any of the grand jury transcripts, and that he intended to use only the presentment, which was a matter of public record, in

---

(B) allows disclosure to the defendant in a criminal case of (1) his own testimony; (2) the testimony of a witness, but only "after the direct testimony of that witness at trial"; and (3) of any exculpatory testimony or exhibits "[u]pon appropriate motion." Pa. R. Crim. P. 230(B). Subsection (C) provides that the court, upon motion and after a hearing, "may order that a transcript of testimony before an investigating grand jury, or physical evidence . . . may be released to another investigative agency, under such other conditions as the court may impose." Pa. R. Crim. P. 230(C).

defending his clients.[7] On January 4, 2002, the District Court denied Camiolo's motion without prejudice.

On January 7, Camiolo again moved to compel production of the county investigating grand jury testimony, filing a motion identical to the one that had been denied. This time, the District Attorney responded to Camiolo's motion by asserting that the supervising judge of the state grand jury was the custodian of the grand jury records. He averred that "neither law nor public policy permits the production of testimony from this case and [I] will contest the right of the parties to obtain grand jury transcripts." Camiolo then had a letter hand delivered to the chambers of the supervising judge, enclosing a courtesy copy of Camiolo's federal court motion to compel production and requesting a reply.

Following a telephone conference with counsel and the District Attorney on January 22, 2002, the District Court directed the District Attorney to produce the grand jury testimony for "*in camera* review[.]" The following day, the District Attorney again advised the District Judge that he was "not permitted to hand over the testimony for two distinct reasons," citing (1) Pennsylvania Rule of Criminal Procedure 229,[8] which establishes that the supervising judge of the grand jury controls all transcripts; and (2) Pennsylvania Rule of Criminal Procedure 230, which governs the disclosure of grand jury testimony. The District Attorney asserted that the "court's order would require [that he] violate the law of the Commonwealth of Pennsylvania."

Within hours of receiving the District Attorney's response, the District Court vacated its January 22 order, entering a

---

7. At oral argument, counsel for the Upper Moreland Township defendants explained that although he was personally granted access to the file room that contained the grand jury transcripts, he did not in fact review any of the transcripts.

8. Rule 229 provides, in relevant part, that "[e]xcept as otherwise set forth in these rules, the court shall control the original and all copies of the transcript and shall maintain their secrecy." Pa. R. Crim. P. 229. The comment to that rule specifies that "[r]eference to the court in this rule and in Rule 230 is intended to be to the supervising judge of the grand jury."

new order directing the District Attorney to produce the transcripts "for *in camera* review[,]" and declaring that "[p]roduction of the grand jury testimony shall not be deemed a waiver of the right of the District Attorney later to challenge the court's authority to issue this Order." The District Attorney complied with the new order, delivering the transcripts to the District Court. After reviewing the transcripts *in camera*, the District Judge denied Camiolo's motion to compel disclosure "on the ground that the testimony does not rebut or in any way undermine the prima facie evidence of probable cause set forth in the Grand Jury Presentment."

Thereafter, in a Memorandum dated February 1, 2002, the District Court granted summary judgment for the remaining defendants on the RICO and § 1983 claims. In the absence of a federal cause of action, the District Court declined to exercise supplemental jurisdiction over Camiolo's state law claims.

This timely appeal followed. On appeal, Camiolo challenges the propriety of the District Court's February 1, 2002 order denying his motion to compel disclosure of the grand jury testimony. He also asserts that the District Court erred in granting summary judgment for the defendants on his RICO and § 1983 claims.

## II.  *Jurisdiction and Standard of Review*

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of a motion for summary judgment and we apply the same standard employed by the District Court under Fed. R. Civ. P. 56(c). *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 87-88 (3d Cir. 2000). Accordingly, the District Court's grant of summary judgment in favor of the defendants will be affirmed if it appears that "there is no genuine issue as to any material fact and that [they are] entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"We apply the abuse of discretion standard when reviewing orders regarding the scope and conduct of discovery," including whether to affirm the denial of a

motion to compel discovery. *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1310 (3d Cir. 1995) (quoting *Beard v. Braunstein*, 914 F.2d 434, 447 (3d Cir.1990)). We also review whether the District Court should have abstained from reaching the merits of the grand jury disclosure question, absent an attempt by Camiolo to first obtain access to the grand jury transcripts from the state court. This was a legal determination over which we exercise plenary review. *Olde Discount Corp. v. Tupman*, 1 F.3d 202, 206 (3d Cir. 1993); *see also Gwynedd Properties, Inc. v. Lower Gwynedd Township*, 970 F.2d 1195, 1199 (3d Cir. 1992).

III.   *Access to the Transcripts from the County Investigating Grand Jury*

In *Younger v. Harris*, 401 U.S. 37, 44 (1971), the Supreme Court of the United States articulated some of the principles and policies that underlie the "notion of 'comity' " that exists between our national and state governments. This

> notion of "comity" . . . is [ ] a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as "our Federalism," and one familiar with the profound debates that ushered our Federal Constitution into existence is bound to respect those who remain loyal to the ideals and dreams of "Our Federalism." . . . What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id.* at 44-45.

The Supreme Court has stated that these "elementary principles of federalism and comity" are "embodied in the full faith and credit statute, 28 U.S.C. § 1738." *Growe v. Emison*, 507 U.S. 25, 35-36 (1993); *see also Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986). It is, of course, a longstanding principle of Constitutional jurisprudence that because a "statute is a 'public act,' faith and credit must be given to its provisions[.]" *John Hancock Mut. Life Ins. Co. v. Yates*, 299 U.S. 178, 183 (1936) (Brandeis, J.). Thus, so as "not [to] unduly interfere with the legitimate activities of the States," *Younger*, 401 U.S. at 45, and to enforce the protections intended to States by the Full Faith and Credit Clause of the Constitution, *see Hughes v. Fetter*, 341 U.S. 609, 613 n.16 (1951), Congress has further directed that:

> The Acts of the legislature of any State, Territory, or Possession of the United States . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738. The Full Faith and Credit Act therefore provides that, to the extent that the Acts of State legislatures do not conflict with the federal Constitution, statutes, and regulations and, thus, run afoul of the Supremacy Clause, U.S. Const., Art. VI, cl. 2, the federal courts are obliged to afford the "Acts of state legislatures" the same respect that the States' own courts would grant those statutes. *McDonald v. City of West Branch, Michigan*, 466 U.S. 284, 288 n.7 (1984); *cf. Growe*, 507 U.S. at 36 ("28 U.S.C. § 1738[ ] obligated the federal court to give that judgment legal effect" and the district court erred in concluding that a state redistricting plan "violated § 2 of the Voting Rights Act").

In Pennsylvania, as in the federal system, "[g]rand jury proceedings have traditionally been conducted in secrecy." *In re Investigating Grand Jury of Philadelphia County,* 437 A.2d 1128, 1130 (Pa. 1981). Through the enactment of the Investigating Grand Jury Act, *see* 42 Pa.C.S.A. §§ 4541-4553, Pennsylvania's legislature has endeavored to ensure the secrecy of the grand jury proceedings conducted in that

state by limiting access to the transcripts of these proceedings.

> [S]ecrecy, which is indispensable to the effective functioning of a grand jury investigation, is designed " '(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect [an] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.' "

*In re Investigating Grand Jury*, 437 A.2d at 1130 (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 n.6 (1958) (quoting with approval *United States v. Rose*, 215 F.2d 617, 628-29 (3d Cir. 1954))).

Section 4549 of the Investigating Grand Jury Act limits the circumstances under which matters occurring before an investigating grand jury may be disclosed, providing that:

> [d]isclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the Commonwealth for use in the performance of their duties. The attorneys for the Commonwealth may *with the approval of the supervising judge* disclose matters occurring before the investigating grand jury including transcripts of testimony to local, State, other state or Federal law enforcement or investigating agencies to assist them in investigating crimes under investigative jurisdiction. Otherwise, [a participant] . . . may disclose matters occurring before the grand jury *only when so directed by the court*. All such persons shall be sworn to secrecy, and shall be in contempt of court if they

> reveal any information which they are sworn to keep secret.

42 Pa.C.S.A. § 4549(b) (emphasis added). Under Pennsylvania Rule of Criminal Procedure 229, the supervising judge of the grand jury "shall control the original and all copies of the transcripts and shall maintain their secrecy." Pa. R. Crim. P. 229. While Rule 230 provides for disclosure to the Commonwealth's attorneys and, to a limited extent, the defendant in a criminal case, subsection (C) allows the supervising judge to grant "Other Disclosures" to "another investigative agency" only "upon appropriate motion, and after a hearing into relevancy[.]" Pa. R. Crim. P. 230(C).

As is evident from these provisions, Pennsylvania's grand jury process is "strictly regulated," *Commonwealth v. McCloskey*, 277 A.2d 764, 775 (Pa. 1971), and the supervising judge has a singular role in maintaining the confidentiality of grand jury proceedings. Indeed, Pennsylvania's Supreme Court has declared that "an investigating grand jury is an arm of the court . . . [and] is judicially supervised from its inception contrary to the practice in most jurisdictions[.]" *Id.* Thus, subject to certain limited exceptions which are not applicable here, matters occurring before a county investigating grand jury may not be disclosed in the absence of an order from that grand jury's supervising judge. Pennsylvania's courts have barred attempts to utilize grand jury materials in civil contexts outside of the criminal investigative purposes for which the grand jury was empaneled. *In re Investigating Grand Jury*, 437 A.2d at 1128 (concluding that Court of Common Pleas had erred in granting full disclosure of grand jury transcripts and evidence to Philadelphia law department in order to aid in a civil investigation); *In re November 1975 Special Investigating Grand Jury*, 445 A.2d 1260 (Pa. Super. Ct. 1982) (rejecting political candidate's attempt to obtain grand jury testimony of his opponent); *cf.* 28 U.S.C. § 1738 (requiring "every court" to afford "the same full faith and credit" as "the Courts of such State . . . from which they are taken"). Before a supervising judge may grant or deny any request for disclosure of certain matters occurring before a county investigating grand jury as required by § 4549(b) of

the Act, that judge must be formally presented with an "appropriate motion" to permit such a determination, and may require "a hearing into relevancy." Pa. R. Crim. P. 230(C).

Camiolo contends that he complied with these requirements by hand-delivering a letter to Judge Subers's chambers, which included a copy of the motion he filed in federal court, and indicating that the federal District Judge would like a reply within seven business days. Nonetheless, Camiolo never presented an "appropriate motion" to Judge Subers. Pa. R. Crim. P. 230(C). As we read Pennsylvania law, Camiolo's courtesy copy of his federal motion did not sufficiently present the matter to Judge Subers for his review and determination. Indeed, in the absence of a motion filed with the state court, there was no reason for Judge Subers to weigh in on whether access should be granted to the transcripts from the county investigating grand jury. In light of the secrecy afforded grand jury matters in Pennsylvania and the respect owed by federal courts to Pennsylvania law, it was not unreasonable for Judge Subers to presume that the District Judge would refrain from ruling on the accessibility of the transcripts until Camiolo formally petitioned the state court for disclosure. Camiolo failed to do so.

In the absence of a ruling from the supervising judge either granting or denying access to the state grand jury materials, the question before us is whether the District Court should have proceeded to rule on Camiolo's motion seeking to compel the production of state grand jury testimony. We conclude that it should not have. At a minimum, and out of the respect and deference owed the state court, the District Court should have abstained from addressing Camiolo's motion. *See, e.g.*, *Younger*, 401 U.S. at 41. Principles of comity and federalism demand that a district court presented with a request to compel the disclosure of any matter occurring before a Pennsylvania investigating grand jury should direct the party to first formally petition the judicial officer who possesses the supervisory authority to grant or deny such access. Accordingly, a party seeking such state grand jury testimony should first present his request to the appropriate state judicial officer.

This approach has been endorsed by other courts. In *Socialist Workers Party v. Grubisic*, 619 F.2d 641 (7th Cir. 1980), the Seventh Circuit considered an appeal by the state's attorney of a district court order requiring that he produce transcripts from a Cook County grand jury. That court held that "notions of comity between the state and federal courts require that the plaintiffs first seek disclosure in the state court with the supervisory powers over the grand jury." *Id.* at 643. The *Grubisic* Court explained that

> comity dictates that the federal courts defer action on any disclosure requests until the party seeking disclosure shows that the state supervisory court has considered his request and has ruled on the continuing need for secrecy. Otherwise the potential threat of disclosure orders in subsequent federal civil litigation would seriously weaken the state court's control over the secrecy of this essential component of its criminal justice system.

*Id.* at 644.

Similarly, in *American Tank Transport, Inc. v. First People's Cmty. Fed. Credit Union*, No. 95-1303, 86 F.3d 1148 (Table), 1996 WL 265993 (4th Cir. May 20, 1996) (per curiam), the Fourth Circuit relied on principles of comity in determining that the district court had not erred by refusing to consider transcripts of witness testimony taken before a state grand jury presented as evidence in opposition to a summary judgment motion. The *American Tank* Court recognized that although the grand jury matter had been released to the appellant by the state court, that court had determined, after receiving a motion for reconsideration during the pendency of the federal action, that the "transcripts were in fact improperly released[.]" *Id.* *3 n.2. To remedy that error, the state court recalled the material then before the district court and prohibited any further disclosure. *Id.* at *3, n.2.[9] Thereafter, the district

---

9. Because the grand jury materials were not properly before the district court, the Fourth Circuit declined to consider them in resolving the appeal. *Id.* Similarly, we declined Camiolo's request to make the testimony from the county investigating grand jury part of the record for our review.

court concluded that no further discovery was necessary and disposed of the summary judgment motion without considering the grand jury transcripts. After reviewing its own caselaw and that of other courts, the *American Tank* court concluded that

> it was proper . . . for the district court to have acknowledged and honored the state court's ruling recalling the grand jury materials. First, the state court ruled upon the application of its own criminal rules governing the release of grand jury materials. Federal courts have indicated that state court rulings on their own procedural matters are due a significant amount of deference. . . .

> Additionally, by asking the district court to ignore the state court's recall order, ATT essentially asked the district court to act as a state appellate court and overturn the state courts [sic] ruling. . . . In this case, if the district court had considered the grand jury materials after the recall order, it would have impermissibly intruded into the province of the state appellate courts to review questions concerning state procedural matters. . . .

> Accordingly, we find that, on the facts of this case, the district court's decision to respect the state court's recall order and thereby exclude the grand jury transcripts from the consideration of the evidence upon the summary judgment motion was in accordance with our basic principles of comity and federalism.

*American Tank*, 1996 WL 265993, *7; *see also United States v. Silva*, 745 F.2d 840, 845 (4th Cir. 1984) (finding that district court did not err in refusing to grant defendant access to transcripts from on-going state grand jury and citing as authority, *inter alia*, principles of comity); *Brunson v. City of Dayton*, 163 F.Supp.2d 919, 923 (S.D. Ohio 2001) (granting motion to quash subpoena seeking the production of state grand jury matter because of plaintiff's failure to first seek an order from the state court supervising the grand jury); *Puricelli v. Borough of Morrisville*, 136 F.R.D. 393 (E.D. Pa. 1991) (court refrained from ordering disclosure of state grand jury transcripts because of comity

consideration and directed parties to jointly petition supervising judge for release of materials). *Cf. United States ex rel. Woodard v. Tynan*, 776 F.2d 250, 252 (10th Cir. 1985) (en banc) (instructing defendants, whose business records had been unconstitutionally seized and sealed by an order of the state court, to petition the state court for the return of those business records so the plaintiff could present its federal case, thereby avoiding "having to decide the Supremacy and Full Faith and Credit Clause constitutional questions").

The approach utilized by the Seventh and Fourth Circuits, and generally adopted herein, is fully consistent with the one directed by the Supreme Court in *Douglas Oil v. Petrol Stops Northwest*, 441 U.S. 221, 227-228 (1979), concerning the disclosure of federal grand jury testimony under Federal Rule of Criminal Procedure 6(e). *Douglas Oil* calls for a collaboration between a federal district court supervising a grand jury investigation and any district court presiding over discovery in a collateral civil proceeding seeking access to that testimony. 441 U.S. at 227-228. The Supreme Court recommends that, "in general, requests for disclosure of [federal] grand jury transcripts should be directed to the court that supervised the grand jury's activities[,]" even if that grand jury session had concluded. *Id.* at 226.

We need not address whether, pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738, a party complying with the procedure outlined herein is then fully bound by the state court's decision, or if a district court might yet be entitled to order the disclosure of state grand jury materials in the event that a state supervising judge refused a federal plaintiff's request for access to such records. Federal law is, of course, supreme; "[t]o [ ] federal statute and policy, conflicting state law and policy must yield. Constitution, Art. VI, cl. 2." *Liner v. Jafco, Inc.*, 375 U.S. 301, 309 (1964). Nonetheless, this record does not require us to reach such a question. Thus, our holding is limited to requiring that a district judge confronted with a request to compel disclosure of matters occurring before a state grand jury should, absent "extraordinary circumstances . . . [or] [o]ther unusual circumstances calling for federal intervention," *see*

*Younger*, 401 U.S. 53-54, abstain from interfering with that state judicial process. In such a case, the district court should direct the requesting party to *first* apply pursuant to applicable state statutes or procedural rules to the appropriate state judicial officer.[10]

In sum, Pennsylvania law generally governs the procedures for obtaining disclosure of the material sought here, and that law requires that a party seeking disclosure must petition the state supervising judge for their release. Because Camiolo never presented a motion to request disclosure of the state grand jury materials to Judge Subers, the District Court should have, at a minimum, abstained from ruling on the motion seeking to compel production of the state grand jury material until Camiolo complied with the dictates of Pennsylvania law. The District Court therefore also erred in compelling the District Attorney to produce the grand jury transcripts for its own *in camera* review, and in considering whether the production of those documents was justified.

---

10. Because notions of comity and federalism may continue to impact whether a district court may ultimately intrude into this sacrosanct area of state criminal law, *see Younger*, 401 U.S. at 53-54, we do not embrace the *dicta* in *Grubisic* which suggested that, if a party's request for disclosure of state grand jury material has been rejected by the supervising state court judge, the District Court presented with a motion to compel disclosure of state grand jury materials merely need consider the applicability of Fed. R. Crim. P. 6(e). *See* 619 F.2d at 644-45 (citing *Douglas Oil*, 441 U.S. at 227-28). First, such a process would seemingly reduce the state court's purported decision to a mere formality, and therefore not really give a state's strong interest in secrecy, as determined by its judicial officer, the deference and consideration that comity and federalism demand. Furthermore, it is unclear why Rule 6(e), which only governs *federal* grand juries, provides a basis for disregarding the states' rules, policies, and determinations on the need for secrecy in their own grand jury proceedings. Federal courts generally owe state laws and judicial determinations "full faith and credit." 28 U.S.C. § 1738. Finally, we are mindful of the *Rooker-Feldman* doctrine, which precludes lower federal court jurisdiction over matters litigated in state court or "inextricably intertwined" with a state adjudication. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *see also Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411 (3d Cir. 2003).

Nonetheless, we conclude that remand to the District Court so it may consider whether to afford Camiolo additional time to formally present the state court with a specific request for the materials he sought is not warranted.[11] As we observed in *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d at 1310, before a party may succeed on a motion to compel discovery, that party "must first prove that it sought discovery" in the manner required by the rules of procedure. Even assuming, *arguendo*, that there had been no concern raised about the secrecy of the grand jury transcripts, Camiolo failed to satisfy the basic prerequisites for compelling discovery. The record indicates that Camiolo never subpoenaed the District Attorney, but proceeded directly to a motion to compel. While Camiolo made an informal request, our prior decisions indicate that such requests will not warrant the reversal of an order denying a motion to compel where the alleged prejudice is due to the movant's failure to comply with the rules. *See Petrucelli*, 46 F.3d at 1310-1311. Here, even after the District Attorney informed Camiolo of the dictates of Pennsylvania law, Camiolo failed to file a motion for disclosure with the supervising judge. Instead, he sought to short-circuit Pennsylvania's carefully considered scheme by appealing directly to the District Court, treating the

---

11. Because remand is not warranted, the District Court need not exercise its discretion by ruling upon a request for an extension of discovery to afford Camiolo yet another chance to obtain the confidential grand jury transcripts. We are mindful, however, of the Supreme Court's instruction in *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 431 (1983), that the need for access in a civil action to the storehouse of evidence compiled by a grand jury "is ordinarily nothing more than a matter of saving time and expense" because "in most cases, the same evidence that could be obtained from the grand jury will be available through ordinary discovery or other routine avenues of investigation." *Id.* Thus, we note that in ruling on an eleventh hour request for an extension of discovery to pursue state grand jury matter, a district court may consider not only the nature of the evidence sought, but also the extent of the moving party's efforts to utilize ordinary discovery to obtain the desired evidence and the degree to which these efforts were unfruitful. Noticeably absent from Camiolo's motion was any description of either the discovery efforts he had taken or an explanation as to why his efforts were nonproductive.

supervising judge of the state grand jury as a mere bystander in interest. Because we believe that any prejudice here results solely from Camiolo's failure to follow both federal and state procedures, we decline to afford him another opportunity to correct his past mistakes.

IV. *Enforceability of the Release Between Camiolo and State Farm*

Camiolo argues that the District Court erred in granting summary judgment for the State Farm defendants. He contends that the District Court's conclusion that the release was enforceable and barred his claims was reached without any "legal analysis of the terms of the release." He submits that an "examination of [the] actual wording of the Release readily reveals that it does not 'on its face' preclude anything but claims relating to State Farm's pre-settlement handling of Camiolo's property damage claim." We disagree.

We have considered the language of the release, mindful that

> A long line of Pennsylvania cases has held that a release covers only those matters which may be fairly said to have been within the contemplation of the parties when the release was given. Accordingly, the general words of the release will not be construed so as to bar the enforcement of a claim which has not accrued at the date of the release.

*Restifo v. McDonald*, 230 A.2d 199, 201 (Pa. 1967) (citations omitted). Thus, under Pennsylvania law, releases must be strictly construed "so as to avoid the ever present possibility" of overreaching. *Id.* at 201. This does not mean, however, that parties are precluded from contracting for the release of claims which have not accrued, "for '[i]t is well settled that where the terms of a release and the facts and circumstances existing at the time of its execution indicate the parties had in mind a general settlement of accounts, the release will be given effect according to its terms.' " *Id.* at 202 (quoting *Brill's Estate*, 12 A.2d 50, 52 (Pa. 1940)); *see also Buttermore v. Aliquippa Hospital*, 561 A.2d 733, 735 (Pa. 1989) ("Parties with possible claims may settle their differences upon such terms as are suitable to them.").

In interpreting a release, a court must be mindful that Pennsylvania's "general rule . . . is that the intention of the parties must govern, but this intention must be gathered from the language of the release." *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 892 (3d Cir. 1975). Accordingly, "the effect of a release is to be determined by the ordinary meaning of its language." *Republic Ins. Co. v. Davis Systems of Pittsburgh South, Inc.*, 670 A.2d 614, 615 (Pa. 1995).

Here, the release is indeed broad, discharging not only Camiolo's property damage and breach of contract claims, but also "extra-contractual damages and claims." The term "extra-contractual damages and claims" was not limited to a bad faith claim, which is typically initiated by an insured against an insurer who has disputed that a loss is covered by its policy. *See* 42 Pa.C.S.A. § 8371. Instead the term "extra-contractual damages and claims" as defined by the release is sweeping, encompassing claims

> for personal injury and emotional distress, and for any damages which may develop at some time in the future, and for any damages relating to the claims handling in connection with this matter, including claims for bad faith, and for any and all unforeseen developments arising out of the incident[.]

By specifically discharging any claims for "personal injury and emotional distress," the release barred Camiolo's state law claims alleging false arrest, false imprisonment, assault and battery, and intentional and negligent infliction of emotional distress. His claims of bad faith under 42 Pa.C.S.A. § 8371 and violation of the Unfair Trade Practices and Consumer Protection law are similarly barred by the specific release of "any damages relating to the claims handling in connection with this matter."

Because the release explicitly discharges causes of action "relating to the claims handling in connection with this matter," it also precluded Camiolo's RICO claim, which was based on State Farm's continued dispute of coverage "by having Paul Camiolo indicted for insurance fraud in an attempt to have the consideration paid for the release returned via a criminal case[.]" The language releasing

claims "for any damages which may develop at some time in the *future*" and "for any and all *unforeseen developments arising out of* the [fire]" also precluded Camiolo's § 1983 claim, which alleged constitutional violations based on allegedly unreasonable investigations which led to Camiolo's arrest and detention.

Camiolo argues that the release cannot bar his RICO, civil rights and state law claims against State Farm because those causes of action did not accrue until several months after the settlement of his insurance action, when he was arrested and detained pending trial. He relies on the principle set forth in *Restifo* that "[a] release will not be construed so as to bar the enforcement of a claim which has not accrued at the date of the release." 230 A.2d at 201. He fails to recognize, however, that while a release of this nature is disfavored, it is not precluded as a matter of law. *Restifo*, 230 A.2d at 202 (recognizing that a release indicating that the "parties had in mind a general settlement of accounts . . . will be given effect according to its terms"). Here, there is no need to construe the release because its plain language indicates an intent to effect a global release, settling all accounts between the parties. This very point was acknowledged by Camiolo in his brief submitted to the District Court in opposition to the summary judgment motion in which he declared that he "entered into the release intending to obtain his peace. He wanted an end to his litigation with State Farm and move on with his life." The release's very terms accomplish that goal, providing for the discharge of not only claims for "any damages which may develop at some time in the *future*," but also claims "for any and all *unforeseen developments arising out of the incident* referred to above[.]"

Camiolo further contends that the release cannot be interpreted as a bar to his claims in this action because a release under *Restifo* may preclude "only those matters which may fairly be said to have been within the contemplation of the parties when the release was given." 230 A.2d at 201. He points out that his arrest and detention did not occur until several months after he executed the release. This argument is not persuasive. As the District Court observed, Camiolo knew that he was

under investigation by the grand jury when he executed the release, and he settled the initial suit so that the proceeds would be available to finance his defense in the criminal case. Despite these known circumstances, the parties inserted no limiting language into the release nor did they provide any exceptions.[12] Instead, the release included a broad provision discharging "any and all actions, causes of actions, claims, demands or damages . . . and for any damages which may develop at some time in the future, and . . . for any and all unforeseen developments arising out of" the fire. The breadth of this language compels the conclusion that Camiolo, who was represented by counsel, intended to settle not only his pending civil suit but all other possible claims against State Farm. Accordingly, we will not disturb the District Court's March 28, 2001 order granting summary judgment in favor of the State Farm defendants.

## V.  *Camiolo's § 1983 Claim of Malicious Prosecution*

Camiolo also contends that the District Court erred by granting summary judgment on his civil rights claim in favor of the municipal and Trooper Investigative Services defendants. Although Camiolo failed to specifically identify before the District Court the constitutional right which was allegedly infringed, he explains in his brief filed with this court that the "essence of" his § 1983 claim "is that he was wrongfully arrested and wrongfully prosecuted on charges of the arson murder of this parents . . . and wrongfully imprisoned for ten months[.]" He further acknowledges that his claim, while not "specifically denominate[d]" as such, is one of "malicious prosecution."

In *Estate of Smith v. Marasco*, this Court acknowledged that in a § 1983 malicious prosecution claim, a plaintiff must show that:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause;

---

12. Noticeably absent from Camiolo's argument is the assertion that his right to proceed in this matter was preserved by any specific language in the body of the release.

> (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

318 F.3d 497, 521 (3d Cir. 2003). Probable cause means "facts and circumstances . . . that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). In *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989), we stated that "a grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute, but that this prima facie evidence may be rebutted by evidence that the presentment was procured by fraud, perjury or other corrupt means."

Here, as the District Court recognized, the presentment constituted prima facie evidence of probable cause. Indeed, review of the presentment confirms that there were ample facts to support a finding of probable cause. While Camiolo may argue that he has rebutted this prima facie evidence by pointing out that exculpatory evidence was not presented to the grand jury, that position is not persuasive for two reasons. First, it is inaccurate; Agent Avato testified before the grand jury that he was of the opinion that the cause of the fire was accidental. Second, Camiolo's argument ignores Supreme Court precedent recognizing that courts have no authority to prescribe a rule which would require a prosecutor to present exculpatory evidence to a grand jury. *See United States v. Williams*, 504 U.S. 36, 51 (1992).

The record in this case is simply devoid of evidence that would support Camiolo's theory that the presentment was procured by fraud, perjury or other corrupt means. At most, the record reflects that some of the defendants changed their opinions as to the cause and origin of the fire after considering additional evidence. This change of opinion, without more, is indicative of neither fraud nor perjury. Because Camiolo did not demonstrate that he was prosecuted without probable cause, the District Court

appropriately concluded that his § 1983 malicious prosecution claim could not survive summary judgment.[13]

## VI. *Camiolo's RICO Claims*

Count I of Camiolo's complaint is a RICO claim against all of the defendants, alleging that "[a]ll defendants herein acted and/or failed to act in participation of and in furtherance of an association-in-fact, the activities of which . . . were intended to and did, in fact, affect interstate commerce." The racketeering activity alleged was mail and wire fraud, *see* 18 U.S.C. §§ 1341, 1343. After discovery closed, the remaining defendants filed summary judgment motions. On February 2, 2002, the District Court granted summary judgment for those defendants on Camiolo's RICO claim. Although Camiolo did not specify the statutory basis for his RICO claim, the District Court discerned that his allegations were consistent with a claim under 18 U.S.C. § 1962(c). It concluded that summary judgment was warranted because Camiolo had failed to make any distinction between the wrongdoers and the association in fact enterprise required under § 1962(c). In addition, the Court observed that there was nothing "in the record to show that telephone conversations and mailings among the defendants were other than appropriate communication related to legitimate insurance and criminal investigations." In the absence of any evidence of the predicate acts of mail and wire fraud to constitute a pattern of racketeering activity, the District Court concluded that Camiolo's RICO claim could not survive summary judgment.

On appeal, Camiolo contends that the District Court

---

13. Furthermore, under *Monell v. New York City*, 436 U.S. 658, 691 (1978), liability under § 1983 for a constitutional deprivation may attach to Upper Moreland Township only if the municipality itself caused the violation. Accordingly, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation," *City of Canton v. Harris*, 489 U.S. 378, 385 (1989), such that the municipality was the "moving force" behind the constitutional deprivation alleged. *Board of the County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404 (1997). This record is devoid of any evidence that Upper Moreland Township had a custom or policy that would have caused Camiolo's violation.

erred in granting the defendants' summary judgment motions, asserting that he satisfied the distinctiveness requirement because the enterprise is "an 'association-in-fact' comprised of all the named defendants, both corporate and individual." With respect to the pattern of racketeering activity, Camiolo contends that the District Court failed to recognize that innocent mailings can satisfy the mailing requirement.

Section 1962(c) of the RICO statute provides that

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]

18 U.S.C. § 1962(c). In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985), the Supreme Court instructed that a "violation of § 1962(c) . . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Racketeering activity includes "any act which is indictable" under several provisions of the federal crimes code, including mail and wire fraud under 18 U.S.C. §§ 1341, 1343. 18 U.S.C. § 1961(1). A pattern of racketeering activity "requires at least two acts of rackeetering activity[.]" *Id.* § 1961(5).

Because Camiolo contends that the racketeering activity here was mail and wire fraud, he was required to produce evidence that there was a "scheme or artifice to defraud." *See* 18 U.S.C. §§ 1341, 1343. While innocent mailings or wire communications may supply the necessary communication element for these criminal offenses, there must be " 'some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension.' " *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1415 (3d Cir. 1991) (quoting *United States v. Pearlstein*, 576 F.2d 531, 535 (3d Cir. 1978)). As the *Kehr* majority explained, the "scheme need not involve affirmative misrepresentation, but the statutory term 'defraud' usually signifies 'the deprivation of something of value by trick, deceit, chicane or

overreaching.' " 926 F.2d at 1415 (quoting *McNally v. United States*, 483 U.S. 350, 358 (1987) (internal quotation marks and citation omitted)).

Against this backdrop, it is plain that the District Court's grant of summary judgment on Camiolo's RICO claim was warranted. The record is devoid of any evidence suggesting that there was a scheme to defraud or to deprive Camiolo of something by trick or deceit. Rather, there was a justifiable dispute between an insured and an insurer as to whether a loss caused by a fire was covered by the policy and a legitimate investigation by law enforcement officials into the cause and origin of the fire.

In the absence of some evidence to support a scheme to defraud, the District Court properly granted summary judgment for defendants.[14] This result is consistent with *Kehr Packages*, which dismissed plaintiff's RICO claim because the allegations of fraud (1) were simply "normal business communications" which "contain[ed] no deceptive elements," and (2) amounted to a breach of contract but did

14. Although the District Court did not address whether Camiolo had standing to bring a RICO claim, it is doubtful that he did. In *Sedima*, the Supreme Court instructed that a RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." 473 U.S. at 496; *see also* 18 U.S.C. § 1964(c) (creating civil remedy for "[a]ny person injured in his *business* or *property* by reason of a violation of section 1962 of this chapter may sue") (emphasis added). No such injury has been alleged. The complaint avers that the pattern of racketeering activities "inflicted harm" and his brief filed with the District Court in opposition to summary judgment explained that the association-in-fact was "designed to . . . deprive the plaintiff of the proceeds of the insurance policy on the Camiolo residence[.]" This allegation of financial loss is not supported by the record inasmuch as he was paid $240,000 in exchange for the release. Although Camiolo's submissions to this court dwell on emotional injury he claims to have sustained as a result of his prosecution and detention, such injury is not a basis for standing under RICO. *Gentry v. Resolution Trust Corp.*, 937 F.2d 899, 918-19 (3d Cir. 1991) (declaring that "RICO plaintiff may recover damages for harm to business and property only, not physical and emotional injuries").

not contain any "deception that would bring it within the purview of the mail fraud statute." 926 F.2d at 1416-17.[15]

## VII. *Conclusion*

The District Court appropriately granted summary judgment for the defendants on Camiolo's RICO and § 1983 claims. While the District Court erred in conducting an *in camera* review of the testimony from the county investigating grand jury, it appropriately denied Camiolo's request for access to the materials. We will affirm the orders of the District Court granting summary judgment for the defendants.

A True Copy:
  Teste:

        *Clerk of the United States Court of Appeals*
          *for the Third Circuit*

---

15. We need not address the distinctiveness issue inasmuch as we have determined that evidence of fraud was lacking.